**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

Case No. 1:19-cv-1552 (ABJ)

<u>**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND RENEWED MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

I.      Plaintiff's FOIA Request. ...............................................................................3

II.     DOJ's Response and the Instant Lawsuit............................................................ 3

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 7

I.      DOJ PROPERLY WITHHELD MATERIAL UNDER FOIA EXEMPTION 5................7

      A.      OLC and OIP Properly Applied The Deliberative Process Privilege .....................9

            1.     The Deliberative Process Privilege .......................................................9

            2.     The Withheld Information Reflects Confidential Legal Advice and Prosecutorial Deliberations .............................................................11

      B.      OLC and OIP Properly Applied The Attorney-Client Privilege............................18

II.     THE COURT LACKS JURISDICTION OVER COUNT II.............................................24

CONCLUSION................................................................................................................. 26

## INTRODUCTION

Exemption 5 of the Freedom of Information Act (FOIA) authorizes the withholding from public disclosure, *inter alia*, of information that is protected by the deliberative process and attorney-client privileges.  The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice.  This very policy concern grounds FOIA's Exemption 5." *Pub. Emps. for Envtl. Responsibility v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).  The deliberative process privilege similarly has been recognized as an "ancient [one] predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations marks omitted).  Legal advice, moreover, is understood to be "an integral part of the decision-making process . . . protected by the deliberative process privilege." *EPIC v. DOJ*, 584 F. Supp. 2d 65, 75 (D.D.C. 2008) (citing *Brinton v. Dep't of State*, 636 F. 2d 600, 604 (D.C. Cir. 1980), and *Coastal States Gas Corp. v. Dep't of Energy*, 617 F. 2d 854, 868 (D.C. Cir. 1980)).

Indeed, the public interest in full and frank communication is heightened when executive branch agencies seek legal advice from the Department of Justice's Office of Legal Counsel (OLC) and when the Attorney General seeks advice from senior Department officials.  As explained in the accompanying Declaration of Paul P. Colborn (Colborn Decl.) and Declaration of Vanessa R. Brinkmann (Brinkmann Decl.), OLC is often asked to provide legal advice with respect to very

difficult and unsettled issues of law regarding sensitive executive branch activities.  Colborn Decl.

¶ 3.  So that executive branch officials may continue to request, receive, and rely on candid legal

advice from OLC on such sensitive matters, it is essential that OLC's legal advice provided in the

context of internal deliberations—and executive branch officials' willingness to seek such

advice—not be inhibited by concerns about public disclosure.  *Id.*

This is no less true when the executive branch official seeking OLC's advice is the Attorney

General.  Although the Attorney General generally may be seen as a supervisor of OLC, he does

at times stand in the shoes of a client of that office.  And when he does, the fact that he may serve

dual roles does not render the legal advice he seeks and obtains from OLC any less deserving of

the protections of the deliberative process and attorney-client privileges.

OLC's legal advice provided to the Attorney General as a client, as well as prosecutorial

advice from a senior official in the Office of the Deputy Attorney General (ODAG), is precisely

what is at issue in this case.  Plaintiff's FOIA request specifically sought documents pertaining to

the advice OLC provided to the Attorney General on the legal question of whether the evidence

developed by Special Counsel Mueller was sufficient to establish that the President committed an

obstruction-of-justice offense.  Colborn Decl. ¶ 8.  The documents at issue now are 28 draft

documents withheld in full, and a final, mostly redacted memorandum to the Attorney General

from the Assistant Attorney General for OLC and the Principal Associate Deputy Attorney General

(PADAG), who had been directly involved in supervising the Special Counsel's investigation and

related prosecutorial decisions.  These documents provide OLC's and the PADAG's legal advice

and prosecutorial analysis on this question.  For the reasons set forth below and detailed in the

attached declarations, the Court should find that FOIA exempts the withheld material from

mandatory disclosure and therefore grant Defendant's motion for summary judgment.

In addition to Plaintiff's challenge to these withholdings, in its Complaint Plaintiff also asserts that DOJ's denial of expedited processing was "contrary to the factual and legal showing CREW made demonstrating its entitlement to expedition." Compl. ⁋ 20, ECF No. 1 (second paragraph numbered 20). However, pursuant to Circuit precedent, this claim is moot and should be dismissed because Defendant has fully responded to Plaintiff's FOIA request.

## BACKGROUND

### I.      Plaintiff's FOIA Request

On April 18, 2019, Plaintiff submitted a FOIA request to OLC seeking "all documents pertaining to the views OLC provided Attorney General William Barr on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense." Colborn. Decl., Ex. B at 1 (Request). With the Request, Plaintiff also submitted to the Director of the Office of Public Affairs (OPA) a request for expedited processing. *Id.* at 3-5.

### II.     DOJ's Response and the Instant Lawsuit

In a letter dated April 26, 2019, OLC acknowledged receipt of the Request, assigned the Request tracking number FY19-131, and informed Plaintiff that OPA had denied expedited processing. Colborn Decl., Ex. C at 1 (citing 28 C.F.R. § 16.5(e)(l)(iv)); *see also* Compl. ¶ 17.

On May 28, 2019, Plaintiff filed the present lawsuit seeking access to the records requested in its April 18, 2019 FOIA request. Compl. ¶¶ 22-24. In Count I, Plaintiff asserts that "DOJ wrongfully withheld agency records requested by the Plaintiff by failing to comply with the statutory time limits . . . and by withholding from disclosure records responsive to plaintiff's FOIA request of OLC." *Id.* ¶ 23. In Count II, Plaintiff asserts that it "properly asked" for expedited processing of its FOIA request, that DOJ denied Plaintiff's request "contrary to the factual and

legal showing CREW made demonstrating its entitlement to expedition," and that Plaintiff "exhausted all applicable administrative remedies with respect to defendant's failure to make a determination on plaintiff's request for expedition." *Id.* ¶¶ 19-20 & 23 (second set of paragraphs numbered 19-20 & 23). On the basis of both counts, Plaintiff asserts that it "is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the requested records." *Id.* ¶ 24; *see also id.* ¶ 24 (second paragraph numbered 24). Plaintiff asks the Court to "[o]rder defendant Department of Justice to immediately and fully process plaintiff's April 18 expedited FOIA request and disclose all non-exempt documents immediately to plaintiff," "[i]ssue a declaration that plaintiff is entitled to immediate processing and disclosure of the requested records," and "[p]rovide for expeditious proceedings in this action." *Id.* at 6-7 (Requested Relief).

On July 8, 2019, Defendant moved to dismiss Count II of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because Plaintiff failed to exhaust applicable administrative remedies as to expedition and failed to adequately allege that it was entitled to expedited processing. *See* Def.'s Partial Mot. to Dismiss, ECF No. 5. Plaintiff opposed Defendant's motion. *See* Mem. in Opp'n to Def.'s Partial Mot. to Dismiss, ECF No. 6. On January 31, 2020, the Court denied Defendant's motion. *See* Order, ECF No. 9.

On February 11, 2020, Plaintiff agreed to limit the scope of the Request to all material provided to the Attorney General or the Office of the Attorney General on the subject of whether the evidence developed by Special Counsel Mueller is sufficient to establish that the President committed an obstruction-of-justice offense.[1]

After conducting an adequate search for records responsive to the limited scope of the

---

[1] Although Plaintiff reserved its right to seek other records covered by the full scope of the Request after reviewing the material released under this limited scope, Plaintiff did not exercise this right.

Request,[2] OLC processed all of the potentially responsive records it located as a result of its search. On May 22, 2020, OLC provided to Plaintiff all the non-exempt records responsive to the limited scope of FOIA request number FY19-131 that did not require referral to another office or entity. OLC released to Plaintiff 32 records, consisting of 56 pages, with redactions pursuant to FOIA Exemptions 5 and 6,[3] and withheld in full 28 documents, consisting of 195 pages, pursuant to Exemption 5. *See* 5 U.S.C. § 552(b)(5), (6). These documents—Document nos. 1-14 and 16-29—are described in the Colborn Declaration, the Brinkmann Declaration, and the index attached as Exhibit A to Colborn Declaration (Index). Additionally, OLC referred one record, consisting of nine pages, to DOJ's Office of Information Policy (OIP) for processing by OIP; on June 17, 2020, OIP released to Plaintiff two pages with redactions pursuant to Exemption 5, and withheld in full seven pages, also pursuant to Exemption 5. This document—Document no. 15, or the March 2019 Memorandum—is described in the Colborn Declaration, the Brinkmann Declaration, and the Index.

## STANDARD OF REVIEW

The Freedom of Information Act, 5 U.S.C. § 552, generally mandates disclosure, upon request, of government records held by an agency of the Federal Government, except to the extent such records are protected from disclosure by one of nine exemptions. *Milner v. Dep't of the Navy*, 562 U.S. 562, 563-566 (2011). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the

---

[2] Plaintiff is not contesting the adequacy of Defendant's search under the FOIA. Colborn Decl. ¶ 12.

[3] Plaintiff is not contesting any of the withholdings taken pursuant to Exemption 6, or any of the withholdings taken pursuant to Exemption 5 from the 32 documents released with redactions on May 22, 2020. Colborn Decl. ¶ 14.

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b). While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give them "meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The FOIA thus represents "a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *Id.* (quoting H.R. Rep. No. 89-1497, pt. 3 as reprinted in 1966 U.S.C.C.A.N. 2418, 2423 (1966)).

FOIA cases are typically and appropriately resolved on motions for summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). As with non-FOIA cases, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Defendants may demonstrate entitlement to summary judgment through affidavits that "'describe the justifications for nondisclosure with reasonably specific detail [and] demonstrate that the information withheld logically falls within the claimed exemption, and [that] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

"'[A] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1).'" *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 102–03 (D.D.C. 2016) (quoting *Friends of Animals v. Salazar*, 670 F.Supp.2d 7, 11 (D.D.C. 2009)). Under Rule 12(b)(1), a claim must be dismissed if a district court lacks subject-matter jurisdiction to entertain the claim. *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011). Plaintiffs bear the burden of demonstrating jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65. In considering a motion to dismiss under Rule 12(b)(1), the Court may "consider matters outside the pleadings." *Forrester v. U.S. Parole Comm'n*, 310 F. Supp. 2d 162, 167 (D.D.C. 2004).

## ARGUMENT

## I.  DOJ PROPERLY WITHHELD MATERIAL UNDER FOIA EXEMPTION 5

As explained in the Colborn Declaration, the Brinkmann Declaration, and the Index, Defendant has invoked Exemption 5 to withhold Document Nos. 1-14 and 16-29, and the redacted portions and withheld pages of the March 2019 Memorandum. These documents contain information reflecting non-final, intra-agency deliberations, for which Defendant reasonably foresees that disclosure would harm an interest protected by Exemption 5. *See* Colborn Decl. at ¶¶ 18-24; Brinkmann Decl. at ¶¶ 11, 16; Ex. A to Colborn Decl. (identifying documents withheld in full or redacted as covered by the deliberative process and attorney-client privileges).

Exemption 5 shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  It thus protects from disclosure those documents that, as here, are shielded by the deliberative process attorney-client privileges.  *See, e.g.*, *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).

Moreover, pursuant to the 2016 FOIA Improvement Act, an agency may withhold material if "the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption."  5 U.S.C. § 552(a)(8)(A)(i); *see also Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, No. CV 18-1173 (ABJ), 2020 WL 1695083, at *6 (D.D.C. Apr. 6, 2020).  While the government believes this statutory language does not require a particularized harm from each disclosure, *see, e.g.*, *Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 354–55 (D.D.C. 2018), the government recognizes that some district courts have required an agency to "explain how a particular Exemption 5 withholding would harm" the agency's deliberative process or the attorney-client relationship.  *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (*Rosenberg I*).  Nonetheless, Defendant's showing here has met that standard.  *See id.* at 78 (an agency "may take a categorical approach—that is, group together like records—[and] . . . explain the foreseeable harm of disclosure for each category"); *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020) (*Rosenberg II*) (noting that where the withheld information is "so obviously sensitive . . . a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough'" (quoting *Ctr. for Investigative Reporting*

*v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. Dec. 31, 2019)).

Because the withheld documents and redacted material fit squarely within the identified privileges, and because Defendant has explained how releasing this material is likely to result in harm to the interests protected by Exemption 5's incorporation of the deliberative process and attorney-client privileges, the Court should grant summary judgment to Defendant.

### A. OLC and OIP Properly Applied The Deliberative Process Privilege

#### 1. The Deliberative Process Privilege

Under Exemption 5, the deliberative process privilege protects from disclosure those agency documents that are both "predecisional" and "deliberative." *See Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d at, 866; *Cleary, Gottlieb v. HHS*, 844 F. Supp. 770, 780 (D.D.C. 1983). A document is "predecisional" if it was "generated before the adoption of an agency policy." *See Coastal States Gas Corp.*, 617 F.2d at 866; *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (a pre-decisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision); *North Dartmouth Prop., Inc. v. HUD*, 984 F. Supp. 65, 69 (D. Mass. 1997) (emphasizing the importance of protecting the "ingredients" of the agency's decisionmaking process). A document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *NLRB v. Sears*, 421 U.S. at 151. Courts have recognized that this privilege is an "ancient [one] predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations marks omitted). The

deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege serves to enhance the quality of agency decisions "by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Thus, Government agencies rely on the privilege to encourage candid discussions on matters of policy between subordinates and superiors; to protect against premature disclosure of proposed policies before they are finally adopted; and to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See NLRB v. Sears*, 421 U.S. at 150-54; *Russell v. Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Documents covered by the deliberative process privilege include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *NLRB v. Sears*, 421 U.S. at 150; *see also Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 26 (D.D.C. 2011) (listing categories of records subject to the deliberative process privilege). In enacting Exemption 5, Congress determined that the disclosure of material that is pre-decisional and deliberative harms an agency's decisionmaking process. *See McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). In a FOIA case, the court's role "is not to second-guess that Congressional judgment on a case-by-case basis." *Id.* Rather, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'" *Chemical Mfrs. Ass'n v. CPSC*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d at 1144). The agency is best situated "to know

what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs.*

*Ass'n*, 600 F. Supp. at 118 (quoting *NLRB v. Sears*, 421 U.S. at 151).

### 2. The Withheld Information Reflects Confidential Legal Advice and Prosecutorial Deliberations

The documents withheld by OLC under Exemption 5 are protected by the deliberative

process privilege. Plaintiff's FOIA request to OLC sought records "pertaining to the views OLC

provided Attorney General William Barr on whether the evidence developed by Special Counsel

Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice

offense." *See* Colborn Decl., Ex. B at 1. The principal function of OLC is to assist the Attorney

General in his role as legal adviser to the President of the United States and to departments and

agencies of the Executive Branch. *See* Colborn Decl. ¶ 2. OLC provides advice and prepares

opinions addressing a wide range of legal questions involving the operations of the Executive

Branch, and its clients include the President, the Attorney General, and other executive branch

officials. *Id.* ¶¶ 2-3. "The D.C. Circuit has long recognized that legal advice is an integral part of

the decision-making process and is protected by the deliberative process privilege." *EPIC v. DOJ*,

584 F. Supp. 2d 65, 75 (D.D.C. 2008), citing *Brinton*, 636 F. 2d at 604; and *Coastal States*, 617 F.

2d at 868. "If OLC provides legal advice as part of a decision-making process, this legal advice

is protected under the deliberative process privilege." *EPIC*, 584 F. Supp. 2d at 75.

The documents withheld in full by OLC under Exemption 5 based on the deliberative

process privilege include 27 drafts for which later or final versions of the documents exist and, in

many cases, are publicly available or were otherwise processed in this case (Document nos. 1-5,

7-14, and 16-29). *See* Colborn Decl. ¶ 15. Each of these withheld documents contains edits,

comments, or both from at least one OLC attorney, reflecting OLC's legal advice and other

contributions to the deliberative process developing the final documents, and are thus

11

quintessentially pre-decisional and deliberative.  *Id.*; *EPIC*, 584 F. Supp. 2d at 75.  Although withheld in full, it is apparent from the material released to Plaintiff that all of these documents are pre-decisional drafts: each of these 27 documents was an attachment to an email released at least in part to Plaintiff, and the unredacted portion of each released email includes information demonstrating that the attachment is a pre-decisional draft.  Colborn Decl. ¶ 15; *see also* Index (identifying where in the production Plaintiff can find the email to which each document was attached).  As many of the cover emails reflect, these documents "contain line edits and/or internal comments from OLC and others."  *Id.* ¶ 19.  Because comparison of any of these documents to later or final versions of these documents would reveal changes made prior to finalization, the withheld draft documents "reflect the give-and-take of the deliberative process of developing the final documents."  *Id.*[4]; *Vaughn v. Rosen*, 523 F.2d at 1144.

Two of these documents are drafts of "material developed for use by the Attorney General in preparing for a Congressional hearing" (Document nos. 26 and 27).  Thus even if these documents had constituted versions finalized for internal use, they nevertheless would be pre-decisional and deliberative.  Colborn Decl. ¶ 19.  They reflect only "input to what the Attorney General ultimately chose to say at the hearing," and not his final determination as to what to say or his actual words.  *Id.*  Documents that reflect a give-and-take about the proper way to respond to a Congressional inquiry, either in the form of a question asked at a hearing or in writing, are protected under Exemption 5 as pre-decisional and deliberative.  *See, e.g.*, *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 19-20 (D.D.C. 2004) (upholding agency's invocation of the

---

[4] Moreover, several of these documents (Document nos. 7-14) are drafts of the March 2019 Memorandum; accordingly, even if these documents were not themselves drafts, the material contained therein is privileged for the same reasons that the material withheld from the March 2019 Memorandum is.  *See infra* at 14-16.

deliberative process privilege of Exemption 5 to protect from disclosure "draft letters . . . [that] constitute recommendations from staff as to how agency officials might handle congressional inquiries") (citing *Krikorian v. Dep't of State*, No. 88-3419, 1990 WL 236108, at *5 (D.D.C.  Dec. 14, 1990), *aff'd* 984 F.2d 461 (D.C. Cir. 1993), and *Town of Norfolk v. U.S. Army Corps. of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992)); *see also Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (finding documents "generated as part of a continuous process of agency decision making, *viz.*, how to respond to on-going inquiries" to be covered by the deliberative process privilege and thus exempt from disclosure under Exemption 5); *ICM Registry, LLC v. Dep't of Commerce*, 538 F. Supp. 2d 130, 136 (D.D.C. 2008) (finding emails discussing how to present agency's role in particular activity to the public to be covered by the deliberative process privilege and thus exempt from disclosure under Exemption 5); *Sierra Club*, 384 F. Supp. 2d at 22-23 (finding document that "shows the development of the Department's policy regarding how to present its positions on ANWR" and documents providing "recommendations to other Department spokespersons on how to address inquiries regarding [a particular event]" are all covered by the deliberative process privilege and thus exempt from disclosure under Exemption 5).

The final document withheld in full by OLC under Exemption 5 based on the deliberative process privilege is a draft that was never developed into a final document (Document no. 6).  *See* Colborn Decl. ¶ 16.[5]  Rather, the document is an "untitled, undated draft legal analysis prepared by [OLC AAG Engel] for his use in providing advice within the Department of Justice.."  *Id.* Document no. 6 contains "OLC legal advice and analysis," "confidential client information," and

---

[5] While this document was not attached to any email, OLC Assistant Attorney General (AAG) Steven Engel printed a copy of it and provided it to the Attorney General.  Colborn Decl. ¶ 16.

"descriptions of Department of Justice deliberations." *Id.* ¶¶ 16, 20. As such, even if it were not a draft, Document no. 6 is the type of document that "[t]he D.C. Circuit has long recognized . . . is an integral part of the decision-making process and is protected by the deliberative process privilege." *EPIC*, 584 F. Supp. 2d at 75.

Finally, the March 2019 Memorandum (Document no. 15), which was released in part to Plaintiff is a pre-decisional, deliberative memorandum to the Attorney General from OLC AAG Engel and PADAG Edward O'Callaghan. Colborn Decl. ¶ 17; Brinkmann ¶ 7 (noting that OIP released in part to Plaintiff the March 2019 Memorandum "withholding certain information on page one pursuant to the attorney-client and deliberative process privileges of Exemption 5, withholding in full pages two through eight pursuant to the same two Exemption 5 privileges, and releasing in full page nine"); *id.* ¶ 12 (noting that the portions of the March 2019 Memorandum released to Plaintiff include the Attorney General's signature and decision on page 9, and OLC's and the PADAG's recommendations, on page 1, that substantively matched the Attorney General's decision as stated on page 9). The document contains their "candid analysis and advice" provided to the Attorney General "prior to his final decision" on the issue addressed in the memorandum— "whether the facts recited [in Volume II of the Special Counsel's Report] would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution," Colborn Decl. ¶ 17. It "was provided to aid in the Attorney General's decision-making processes as it relates to the findings of the [Special Counsel's] investigation," Brinkmann Decl. ¶ 11. PADAG O'Callaghan had been directly involved in supervising the Special Counsel's investigation and related prosecutorial decisions; as a result, in that capacity, his candid prosecutorial recommendations to the Attorney General were especially valuable. Moreover, because "any determination as to whether the President committed an obstruction-of-justice

14

offense was left to the purview of the Attorney General," *id.*, the memorandum is clearly pre-decisional. *See, e.g.*, *Renegotiation Bd.*, 421 U.S. at 184 (a pre-decisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision); *see also Coastal States Gas Corp.*, 617 F.2d at 866 (a document is "predecisional" if it was "generated before the adoption of an agency policy").

That the March 2019 Memorandum is pre-decisional and deliberative is also apparent from the portions of the memorandum released to Plaintiff: the released material on page 1 of the memorandum indicate both that the memorandum was submitted to the Attorney General to "*assist him in determining* whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution,'" and that the memorandum presents a recommendation from the authors to the Attorney General. Colborn Decl. ¶ 17. The withheld portions contain the authors' legal advice and prosecutorial deliberations in support of that recommendation, *id.*, and is thus quintessentially deliberative. *See, e.g.*, *Vaughn v. Rosen*, 523 F.2d at 1143-44 (a document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes recommendations or expresses opinions on legal . . . matters"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 274–75 (D.D.C. 2014) ("[T]he fact that the authors of these documents were lawyers whose role is to provide legal advice also confirms that these records were deliberative."); *Elec. Frontier Found. v. Dep't of Justice,* 739 F.3d 1, 9 (D.C. Cir. 2014) ("There can be no doubt that . . . legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5." (citing *Brinton,* 636 F.2d at 604); *EPIC*, 584 F. Supp. 2d at 75 ("the D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process

and is protected by the deliberative process privilege.").

Finally, the March 2019 Memorandum contains analysis about whether evidence supports initiating or declining a prosecution.  Documents containing deliberations about whether to pursue prosecution are generally protected by the deliberative process privilege.  *See, e.g.*, *Gov't Accountability Project v. U.S. DOJ*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (deliberative process privilege applies to communications "related to, and preced[ing] a final decision by the DOJ not to pursue prosecution of a case."); *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 259-60 (D.D.C. 2008) (holding that material which "set forth and identified [the] . . . reasons and rationale for the immediate declination of prosecution by the federal government" was covered by the deliberative process privilege and protected from disclosure under Exemption 5); *Jackson v. USAO*, 293 F. Supp. 2d 34, 40–41 (D.D.C. 2003) (holding that the deliberative process privilege protects an investigating AUSA's notes when drafted "in deciding whether to prosecute a criminal complaint"); *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 10–11 (D.D.C. 2000) (rejecting the plaintiff's argument that documents were "not subject to the deliberative process and attorney work product privileges because they recommend declining prosecution," because such a contention "is unsupported by fact and law"); *see also A. Michael's Piano v. FTC,* 18 F.3d 138, 146 (2d Cir. 1994) (affirming that deliberative process privilege applies "even if a staff attorney is considering or recommending closing an investigation")*; Venkataram v. OIP*, No. CIV. 09-6520, 2013 WL 3871730, at *7 (D.N.J. July 25, 2013); *Berger v. IRS*, 487 F. Supp. 2d 482, 499 (D.N.J. 2007), *aff'd*, 288 F. App'x 829 (3d Cir. 2008) (holding that a letter memorializing the U.S. Attorney's decision not to prosecute a plaintiff qualified for the deliberative process privilege because the analysis and recommendations contained in the letter preceded the ultimate determination by the DOJ not to prosecute).

Moreover, compelled disclosure of the withheld documents and material would seriously inhibit the candor and effectiveness of the OLC attorneys engaged in the highly deliberative process of providing legal advice to executive branch clients, including the Attorney General, and the quality and integrity of the final result would inevitably suffer.  *See* Colborn Decl. ¶¶ 3-4, 23-24; Brinkmann Decl. ¶ 10, 13.   As OLC explained, "compelled disclosure" of the withheld documents, or the redacted or withheld portions of the March 2019 Memorandum, "would undermine the Attorney General's ability to seek and receive confidential advice from his advisers, including OLC."  Colborn Decl. ¶ 23.  Further, it would "compromise the deliberative processes of the Executive Branch—in this case, of the Attorney General and his senior advisers."  *Id.* Maintaining the confidentiality of OLC's legal advice provided in the context of executive branch deliberations, including deliberations within DOJ, is "essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the Attorney General, his advisers, and other executive branch officials continue to request and rely on frank legal advice from OLC and other government attorneys on sensitive matters."  *Id.* ¶ 24.  In sum, OLC and OIP have established both the nature of the harm intended to be protected by the deliberative process privilege and the link between that harm and the specific information contained in the withheld material, thereby satisfying the foreseeable harm requirement under the 2016 FOIA Improvement Act.  5 U.S.C. § 552(a)(8)(A)(i); *see also Cause of Action Inst.*, 330 F. Supp. 3d at 354–55.

Accordingly, OLC and OIP properly relied on the deliberative process privilege to withhold the material pursuant to Exemption 5.  *See NLRB v. Sears*, 421 U.S. at 150-54; *Russell*, 682 F.2d at 1048.

### B.  OLC and OIP Properly Applied The Attorney-Client Privilege

Because all of the withheld material is protected from disclosure under the deliberative process privilege, the Court need not reach the question of whether it was also properly withheld under the attorney-client privilege.  *See, e.g.*, *Judicial Watch*, 20 F. Supp. 3d at 276.  But Defendant did properly withhold the 28 documents and the withheld and redacted portions of the March 2019 Memorandum under the attorney-client privilege as well.

Exemption 5 plainly applies to agency records protected by the attorney-client privilege. *See Coastal States*, 617 F.2d at 862; *NLRB v. Sears*, 421 U.S. at 154.  The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  The privilege "fully applies to communications between government attorneys and the government officials and agencies to which they render legal service." *N.Y. Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 234, 237 (D.D.C. 2017) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)).  A government agency "needs the . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863.

The documents and material withheld by OLC under Exemption 5 are protected by the attorney-client privilege for many of the same reasons they are protected by the deliberative process privilege.  Because Plaintiff's FOIA request to OLC sought records "pertaining to the views OLC provided Attorney General William Barr on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense," *see* Colborn Decl., Ex. B at 1, it was inherently seeking records containing communications between clients and their attorneys for the purpose of securing legal

advice.  *See, e.g.*, *N.Y. Times*, 282 F. Supp. 3d at 237 (finding memorandum from OLC to Attorney General "is a quintessential example of the sort of document that falls within the attorney-client privilege: advice from an attorney (the head of OLC) to his client (the Attorney General . . .) concerning the legal aspects of the client's contemplated actions and based on confidential information from the client concerning those contemplated actions" (citing *In re Sealed Case*, 737 F.2d at 98-99 (D.C. Cir. 1984))).  As explained *supra*, beyond OLC's role assisting the Attorney General in his capacity of legal adviser to the President and to the departments and agencies of the Executive Branch, OLC itself prepares opinions and memoranda addressing a wide range of legal questions involving the operations of the Executive Branch, and provides advice directly to its many clients, including to the Attorney General.  *See* Colborn Decl. ¶¶ 2-3.

The documents and material withheld under the attorney-client privilege include draft documents that reflect the confidential communications between OLC attorneys and the Attorney General made for the purpose of providing legal advice regarding whether the facts set forth in Volume II of Special Counsel Mueller's report "would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution," and the legal advice OLC provided to the Attorney General regarding that same question.  *See* Colborn Decl. ¶¶ 15-22; Brinkmann Decl. ¶ 11.

All 29 documents at issue were "prepared or revised by OLC attorneys in the course of carrying out OLC's role of legal adviser to the Attorney General and the Department of Justice." Colborn Decl. ¶ 22.  Each of the documents reflects OLC's legal advice or analysis, *id.* ¶¶ 15-17, and, any factual material they include was "provided to OLC . . . for purposes of developing this confidential legal advice," *id.* ¶ 22.  *See also* Brinkmann Decl. ¶ 12.  In their capacity as legal

advisors to the Attorney General, "OLC attorneys maintain an attorney-client relationship with the Attorney General . . . similar to the attorney-client relationship that the lawyers in the Office of General Counsel of any other agency have with the agency head and other officials." Colborn Decl. ¶ 22.  Having been asked to provide legal advice, *see id.* ¶¶ 17, 22, "OLC attorneys stood in a special relationship of trust with the Attorney General." *Id.* ¶ 22.  Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, so too would disclosure of the legal advice itself undermine that trust.  *Id.*; Brinkmann Decl. ¶ 13.  These 28 documents and the redacted portions of the March 2019 Memorandum contain "professional advice on legal questions which bears on [agency] decisions" and "an agency's communications with its attorneys," and thus fall squarely within the categories that the Court of Appeals found to be "[c]ertainly" protected from disclosure under Exemption 5.  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

As Mr. Colborn explains, OLC's legal advice is generally kept confidential, and that confidentiality is particularly important because of OLC's role in the decisionmaking process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. Colborn Decl. ¶ 3; Brinkmann Decl. ¶ 13. Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch concerning controversial matters. Colborn Decl. ¶ 4.  To ensure that executive branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC's legal advice provided in the context of internal deliberations—and executive branch officials' willingness to seek such advice—not be inhibited by concerns about public disclosure. *Id.* ¶¶ 3- 4, 22; *see also id.* ¶ 4 (highlighting that, in the governmental context, promoting full and frank

communication between governmental attorneys and their clients supports the broader public interests in the government's observance of law and the administration of justice); Brinkmann Decl. ¶ 13.

Other courts in this district have found that OLC's legal advice memoranda fall within the scope of Exemption 5 because, *inter alia*, they are protected by the attorney-client communication privilege. *See, e.g.*, *N.Y. Times*, 282 F. Supp. 3d at 237; *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 1:06-CV-214 (RCL), 2014 WL 1279280, at *1 (D.D.C. Mar. 31, 2014).[6] In doing so, these courts have rejected arguments by the plaintiffs that the OLC memoranda are "not covered by Exemption 5 because [they have] become 'working law.'" *N.Y. Times*, 282 F. Supp. 3d at 241. The "working law" exception is not applicable to the analysis here because "the D.C. Circuit appears to have solely applied the exception to documents falling under the deliberative process privilege." *Id.* at 241 n.2.

But even if the exception were applicable to documents like the March 2019 Memorandum in this case, such memoranda only become "working law" when the agency to which a memorandum is addressed "'chooses *expressly* to adopt or incorporate by reference'" its reasoning. *Elec. Frontier Found.*, 739 F.3d at 10 (emphasis in original) (citing *Sears, Roebuck & Co.*, 421 U.S. at 161 ("[W]hen adopted, the reasoning becomes that of the agency and becomes its

---

[6] This decision rests heavily on the then-recent decision by the D.C. Circuit that a different OLC opinion was wholly exempt from disclosure under Exemption 5 and properly withheld as privileged pursuant to the deliberative process privilege. *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir.), *cert. denied*, No. 13-1474, 135 S. Ct. 356 (2014) (*EFF*); *see also New York Times v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015). Although both the deliberative process and attorney-client privileges were asserted in *EFF*, the district court and appeals court found the deliberative process privilege alone sufficient to resolve the case and did not reach any decision on the attorney-client privilege. As the subsequent district court cases make clear, however, the rationale applies with equal force to both privileges.

responsibility to defend.")).  Importantly, "the [D.C. Circuit] has refused to equate reference to a report's conclusions with adoption of its reasoning, and it is the latter that destroys the privilege." *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1197 (D.C. Cir. 1991); *see also Common Cause v. IRS,* 646 F.2d 656, 660 (D.C. Cir. 1981) ("[C]asual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda is not the express adoption or incorporation by reference which . . . would remove the protection of Exemption 5."); *Ball v. Bd. of Governors of Fed. Reserve Sys.*, 87 F. Supp. 3d 33, 51 (D.D.C. 2015).  Here, although the Attorney General "relied on" the March 2019 Memorandum in his decision-making, he "did not incorporate by reference or explicitly adopt [it] in making his final decision."  Brinkmann Decl. ¶ 13.  "The Attorney General's signature . . . provides no indication that he adopted the reasoning and legal analysis contained in the memorandum to support OLC's recommendation," *id.*, and thus, the withheld portions of the March 2019 Memorandum are not subject to the "working law" exception, *see Elec. Frontier Found.,* 739 F.3d at 10.

This Court should accordingly find that the withheld and redacted portions of the March 2019 Memorandum, as well as the other 28 withheld documents, are protected by the attorney-client privilege.  The documents contain no reasonably segregable, nonexempt information, and, to the best of Mr. Colborn's knowledge, have never been disclosed publicly, or publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision.  *Id.* ¶¶ 25-27; *see also* Brinkmann Decl. ¶ 12.

Finally, with respect to the attorney-client privilege, disclosing these confidential documents would seriously inhibit the free and candid flow of information between agency decision-makers and their legal advisers, and would chill the sort of full and frank communications between attorneys and their clients that in turn promotes broader public interests in the observance

of law and the administration of justice. Colborn Decl. ¶¶ 4, 24. As OLC explained, OLC attorneys are "often asked to provide advice and analysis with respect to very difficult and unsettled questions of law, and on matters that can be quite sensitive"; therefore, both the Attorney General's ability to "carry[] out his mission" and the "proper functioning of the Executive Branch overall" depend on "OLC's legal advice not be[ing] inhibited by concerns about the risk of public disclosure." *Id.* ¶ 24. Further, maintaining the confidentiality of OLC's legal advice provided in the context of executive branch deliberations, including deliberations within DOJ, is "essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the Attorney General, his advisers, and other executive branch officials continue to request and rely on frank legal advice from OLC and other government attorneys on sensitive matters." *Id.* Thus, OLC and OIP have established both the nature of the harm intended to be protected by the asserted privileges and the link between that harm and the specific information contained in the withheld material, thus satisfying the foreseeable harm requirement under the 2016 FOIA Improvement Act. *See* 5 U.S.C. § 552(a)(8)(A)(i); *see also Cause of Action Inst.*, 330 F. Supp. 3d at 354–55.

Accordingly, the material has been properly withheld as protected by the attorney-client privilege pursuant to Exemption 5. *N.Y. Times. Co.*, 282 F. Supp. 3d at 237-38.

\*       \*       \*

For all of these reasons, Defendant properly invoked Exemption 5 to withhold from disclosure the 28 documents withheld in full and the redacted material and withheld pages from the March 2019 Memorandum.

## II.     THE COURT LACKS JURISDICTION OVER COUNT II.

In Count II, Plaintiff asserts that DOJ's denial of expedited processing was "contrary to the

factual and legal showing CREW made demonstrating its entitlement to expedition."  Compl. ¶ 20 (second paragraph numbered 20).  Now that Defendant has provided a complete response to the Request, the Court no longer has jurisdiction over a challenge to that denial.

The FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."  5 U.S.C. § 552(a)(6)(E)(iv).  The responses provided to Plaintiff by OLC on May 22, 2020, and by OIP on June 17, 2020, taken together, constitute a complete response to the Request (as narrowed by agreement of the parties).  *See, e.g., Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) (construing "the phrase 'complete response' in 5 U.S.C. § 552(a)(6)(E)(iv) to mean a final determination under § 552(a)(6)(A), *i.e.*, a final administrative determination whether to release any records that are responsive to the individual's request.").   Accordingly, the Court no longer has statutory jurisdiction to hear Plaintiff's claim in Count II.  *See, e.g.*, *CREW v. DOJ*, 535 F. Supp. 2d 157, 160 n.1 & 163 (D.D.C. 2008) (dismissing claim for failure to grant expedited processing for lack of jurisdiction on the basis of 5 U.S.C. § 552(a)(6)(E)(iv)); *id.* at 160 n.1 (noting that CREW recognized that "[b]ecause DOJ has now completed processing CREW's request," CREW's claim for failure to grant expedited processing had become moot); *Judicial Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111, 112 (D.D.C. 2001) ("Therefore, while plaintiff was entitled to file a lawsuit on June 11, 2001 for review of defendant's failure to respond to its request for expedited processing, because defendant has since provided a complete response to the request for records, this Court no longer has subject matter jurisdiction over the claim that defendant failed to expedite processing of plaintiff's request.").  This court should therefore dismiss Plaintiff's expedited processing claim for lack of jurisdiction.

This claim is also moot.  "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome so that the court can provide no effective remedy because a party has already obtained all the relief that [it has] sought." *Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 51 (D.D.C. 2013) (alteration in original, internal quotation marks and citation omitted); *see also Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) ("A case becomes moot when 'intervening events make it impossible to grant the prevailing party effective relief.'").  On the basis of the D.C. Circuit's decision in *Edmonds v. FBI*, 417 F.3d 1319, 1323-24 (D.C. Cir. 2005), a court in this district explained that "an important question to ask in determining whether a requester's claim regarding . . . a request for expedited processing is moot is what relief the requester still has available."  *Muttitt*, 926 F. Supp. 2d at 296.

Here, no further relief is available, for two reasons.  First, the only relief Plaintiff requests related to this claim is an order that DOJ "immediately and fully process plaintiff's April 18 expedited FOIA request," and "a declaration that plaintiff is entitled to immediate processing," Compl. at 6-7 (Requested Relief).  But DOJ has already fully processed the Request, and Plaintiff's claim for expedition is therefore not redressable.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (noting that "the very essence of the redressability requirement" is that the plaintiff must identify relief that could remedy the injury suffered).  Second, on a claim for expedited processing, "the only relief required by the FOIA with regard to expedited processing is moving an individual's request "to the front of the agency's processing queue."  *Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 259 (D.D.C. 2005); *see also Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38, 44 (D.D.C. 2006) ("To compel the agency to provide expedited processing would merely place plaintiffs' request ahead of others that are awaiting responses to their requests.").  Because Plaintiff has already been afforded the only relief a court

can grant for a claim for expedited processing, Count II is moot.

Accordingly, Count II of Plaintiff's complaint should be dismissed for lack of jurisdiction because DOJ's response to the Request moots any claim concerning the Expedition Request.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in Defendant's favor as to Count I of the Complaint and dismiss Count II of the Complaint.

Dated:  August 12, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

/s/ *Julie Straus Harris*
JULIE STRAUS HARRIS (DC Bar # 1021928)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendant*