### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-1552 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, | |
| Defendant. | |

### <u>DECLARATION OF VANESSA R. BRINKMANN</u>

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.   I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (Department or DOJ).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP.  The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from within six senior leadership offices of the Department, specifically the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO).  Moreover, the IR Staff is responsible for processing FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2.   The IR Staff of OIP is responsible for conducting searches in response to FOIA requests seeking records of the above-referenced offices, for determining whether records located pursuant to its searches are responsive to those FOIA requests, and, if so, whether such records are appropriate for release in accordance with the FOIA.  In processing such requests, the IR Staff consults with Department personnel in the senior leadership offices, with Department

records management staff and/or with other components within the Department, as well as with others in the Executive Branch.

3.   I make the statements herein on the basis of personal knowledge and on information acquired by me in the course of performing my official duties, including my discussions with knowledgeable Department personnel, and my review of and determinations made regarding the request and material at issue in this case.

4.   This declaration is in support of the Department's Motion for Summary Judgment and should be read in tandem with the Office of Legal Counsel's (OLC) contemporaneously-filed declaration of Paul P. Colborn.

### OLC's Consultation with OIP

5.   On April 22, 2020, OIP received a consultation from OLC consisting of thirty-two documents responsive to Plaintiff's April 18, 2019 FOIA request seeking "copies of all documents pertaining to the views OLC provided Attorney General William Barr on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense."

6.   After review of the thirty-two documents, OIP informed OLC that information contained in Principal Associate Deputy Attorney General ("PADAG") Edward O'Callaghan's March 24, 2019 4:31PM email (Document ID: 0.7.23922.72824) (hereinafter, the O'Callaghan Email) was being withheld pursuant to the deliberative process privilege and attorney-client privilege under Exemption 5 of the FOIA.  In addition, certain additional information within the thirty-two documents was being withheld pursuant to FOIA Exemption 6.[1]

---

[1] Plaintiff has indicated that it will not be challenging the withholdings by OIP made pursuant to FOIA Exemptions 5 and 6 in the thirty-two documents released in part by OLC to Plaintiff on May 22, 2020, so no further discussion of the Exemption 5 and 6 withholdings within those thirty-two documents will be provided in this declaration.

**OLC's Referral to OIP**

7.   Subsequently, on May 8, 2020, OIP received a referral from OLC for processing and direct response to Plaintiff consisting of a nine-page memorandum to the Attorney General.  This memorandum, drafted by OLC and PADAG O'Callaghan and dated March 24, 2019, with the subject "Review of the Special Counsel's Report" (hereinafter, the March 2019 Memorandum) is a deliberative memorandum containing legal advice for the Attorney General from OLC Assistant Attorney General ("AAG") Steven Engel and PADAG O'Callaghan.  The March 2019 Memorandum discusses the recommendation in support of the conclusion, on page 9, that "the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense[,]" and includes the authors' deliberations and legal analysis and advice developed in the course of preparing that recommendation.  The March 2019 Memorandum was referred to OIP because it was solicited by and written for the Attorney General.  By email dated June 17, 2020, OIP released in part the March 2019 Memorandum to Plaintiff, withholding certain information on page one pursuant to the attorney-client and deliberative process privileges of Exemption 5, withholding in full pages two through eight pursuant to the same two Exemption 5 privileges, and releasing in full page nine.  OIP's June 17, 2020 letter to Plaintiff and the redacted version of the March 2019 Memorandum are attached hereto as Exhibit A.

**Exemption 5**

8.   Exemption 5 of the FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  All of the information withheld by the

Department pursuant to Exemption 5 of the FOIA within the March 2019 Memorandum is withheld pursuant to the deliberative process and attorney-client privileges.

Exemption 5: Inter-/Intra-Agency Threshold

9.   Records withheld pursuant to Exemption 5 of the FOIA must first meet the threshold requirement as inter- or intra-agency.  Here, the information withheld pursuant to Exemption 5 is located within the four corners of the March 2019 Memorandum, which is a memorandum generated by, exchanged within, and wholly internal to the Department.  As such, this record containing information withheld pursuant to Exemption 5 is an intra-agency record within the threshold requirement of the exemption.

Exemption 5: Deliberative Process Privilege

10. The deliberative process privilege of Exemption 5 protects the decision-making process of government agencies from public disclosure in order to enhance the quality of agency decisions and to encourage and facilitate candid discussions among Executive Branch employees.  To be protected by the deliberative process privilege, the information at issue must be both "pre-decisional" and "deliberative."  If pre-decisional, deliberative records were to be routinely released to the public, Department employees would be much more cautious in their discussions with each other and in providing all pertinent information and viewpoints to agency decision-makers.  This lack of candor would seriously impair the Department's ability to foster the forthright, internal discussions required for efficient, effective, and proper decision-making, particularly here as it pertains to high-profile and sensitive legal issues concerning the findings of the SCO investigation.

<u>March 2019 Memorandum</u>

11. While the March 2019 Memorandum is a "final" document (as opposed to a "draft" document), the memorandum as a whole contains pre-decisional recommendations and advice solicited by the Attorney General and provided by OLC and PADAG O'Callaghan.  The material that has been withheld within this memorandum consists of OLC's and the PADAG's candid analysis and legal advice to the Attorney General, which was provided to the Attorney General prior to his final decision on the matter.  It is therefore pre-decisional.  The same material is also deliberative, as it was provided to aid in the Attorney General's decision-making process as it relates to the findings of the SCO investigation, and specifically as it relates to whether the evidence developed by SCO's investigation is sufficient to establish that the President committed an obstruction-of-justice offense.  This legal question is one that the Special Counsel's "Report On The Investigation Into Russian Interference In The 2016 Presidential Election" (hereinafter, the Report) did not resolve.  As such, any determination as to whether the President committed an obstruction-of-justice offense was left to the purview of the Attorney General.  Throughout the March 2019 Memorandum, OLC and the PADAG provide the Attorney General with analyses of legal precedent, statute, prosecutorial standards, and general principles of law; discussions applying the relevant law and standards to the evidence presented for evaluation; evaluations of judicial precedent and of legal theories presented in the Report; considerations of potential outcomes based on legal precedent and theories; and their final recommendation, as well as other considerations evaluated by OLC and the PADAG.  OIP therefore determined that the information withheld within the March 2019 Memorandum is both pre-decisional and deliberative, and therefore falls squarely within Exemption 5 of the FOIA.

12. Moreover, OIP reviewed the March 2019 Memorandum with an eye toward segregation and disclosure of as much information as possible, particularly given the high public interest and attention devoted to the SCO investigation, while also protecting information the release of which would harm an interest protected by Exemption 5.  Indeed, OIP determined that the factual information contained in the memorandum's header, the information contained in footnote one, the Attorney General's signature and decision, and OLC's and the PADAG's recommendations that substantively matched the Attorney General's decision could be segregated and released to Plaintiff.  As it pertains to any factual material contained within the withheld portions of the March 2019 Memorandum, footnote one on page one of the memorandum specifically states that "[g]iven the length and detail of the Special Counsel's Report, we do not recount the relevant facts here."  Certain portions of the March 2019 Memorandum contain selected facts upon which OLC and the PADAG focused their analysis. Revealing these selected facts would reveal the scope, focus, and emphasis of the legal analysis and advice being provided to the Attorney General.  To the extent that any additional facts may be discussed in the body of the March 2019 Memorandum to facilitate the discussion and analysis therein, those facts are inextricably intertwined with the pre-decisional, deliberative information and, as such, the March 2019 Memorandum contains no additional factual information that could be released to Plaintiff beyond that which has already been released.

13. OIP has released OLC's and the PADAG's recommendation found on page 9 of the memorandum because the Attorney General's signature on that page signifies adoption of the final recommendation, as expressly written on that page.  The Attorney General's signature, however, provides no indication that he adopted the reasoning and legal analysis contained in the memorandum to support OLC's and the PADAG's recommendation.  As such, most of the

memorandum remains pre-decisional and deliberative.  Moreover, release of this information,

upon which the Attorney General relied in his decision-making, but that the Attorney General

did not expressly incorporate by reference or explicitly adopt in making his final decision, would

result in foreseeable harm by causing confusion to the general public.  Every public release of

new information related to the SCO investigation and resulting prosecutions (or declinations)

creates a flurry of media and public attention.  If the information withheld in the March 2019

Memorandum was released here, the public discourse surrounding the Attorney General's

decision in this matter would be misinformed, based on a release of underlying reasoning and

rationales that the Attorney General has not explicitly adopted.  In addition, release of OLC's

and the PADAG's candid advice and analysis in this instance may undermine the Attorney

General's ability to seek and receive frank and candid advice from OLC and other counsel,

advisors, and staff in the future, particularly as it relates to high-profile and sensitive issues

involving intense public scrutiny and attention.  Release of the withheld portions of the

memorandum would put other counsel, advisors, and staff on notice that their analysis and

advice provided to the Attorney General could also be released, likely resulting in a more

circumspect approach in providing their advice in the future.  This would result in harm to the

Attorney General's ability to obtain frank and well-reasoned advice, in turn harming the

decision-making apparatus of the Department.

14. OIP has conducted a line-by-line review of the March 2019 Memorandum and

segregated for release the information found on page one of the memorandum which – while not

an exact match to the final recommendation that was released on page nine – reflects

substantially the same information contained in the final recommendation released on page nine.

OIP therefore determined that there would be no foreseeable harm in release of this particular

information.  However, after a thorough review of the entirety of the memorandum, OIP

determined that there would be foreseeable harm in the release of any additional information

contained within the March 2019 Memorandum, as discussed *supra* paragraphs 11-13.  As such,

no additional information could be segregated for release to Plaintiff.

Exemption 5: Attorney-Client Privilege

15. The attorney-client privilege of Exemption 5 protects records that contain or reflect

confidential legal advice provided by an attorney to a client, as well as other confidential

communications, which are designated to provide legal advice from the attorney to the client and

contain pertinent information communicated to the attorney by the client.  OLC attorneys

provide legal advice to the Attorney General and prepare opinions which address a wide range of

legal questions involving the operations of the Executive Branch.  While some of OLC's

opinions may be published for release or discretionarily released to the public, OLC's legal

advice is generally kept confidential within the Executive Branch.  The Attorney General relies

upon the confidentiality of OLC's legal advice in order to fulfill his duties effectively.

16. All of the information contained within the March 2019 Memorandum, but withheld

from release to Plaintiff is also withheld pursuant to the attorney-client privilege of Exemption 5.

The role of OLC attorneys includes providing "opinions to the Attorney General…on questions

of law arising in the administration of the Department."  25 C.F.R. § 0.25(c).  In this capacity,

OLC attorneys and the Attorney General maintain an attorney-client relationship.  As described

*supra* ¶ 7, the March 2019 Memorandum contains OLC's and the PADAG's legal analysis and

advice solicited by the Attorney General and shared in the course of providing confidential legal

advice to the Attorney General.  As such, OIP has determined that the attorney-client privilege,

in addition to the deliberative process privilege, applies to the withheld portions of the March 2019 Memorandum.[2]

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed this 12th day of August, 2020.

---

[2] A more fulsome discussion of the attorney-client privilege, including a description of OLC's role within the Department and a discussion of the foreseeable harm associated with releasing the material withheld from the OLC Memorandum, is described in the Colborn Declaration, ¶¶ 22-24.

Exhibit A



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

June 17, 2020

Anne Weismann
Citizens for Responsibility and
 Ethics in Washington
1101 K Street, NW, Suite 201                    Re:    FOIA-2020-01123
Washington, DC  20005                                  No. 19-cv-1552 (D.D.C.)
aweismann@citizensforethics.org                        VRB:JMB:BRV

Dear Anne Weismann:

        While processing your Freedom of Information Act (FOIA) request to the Office of
Legal Counsel (OLC) dated April 18, 2019, for records "pertaining to the views OLC provided
Attorney General William Barr on whether the evidence developed by Special Counsel Robert
Mueller is sufficient to establish that the President committed an obstruction-of-justice
offense," OLC referred one document, totaling nine pages, to this Office for processing and
direct response to you.  For your information, this document was received by this Office on
May 8, 2020, and the OLC FOIA request number associated with your request is 19-131.

        This Office's review of the nine-page document referred by OLC is now complete.  I
have determined that two pages are appropriate for release with excisions made pursuant to
Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  The remaining seven pages are being
withheld in full pursuant to Exemption 5.  Exemption 5 pertains to certain inter- and intra-
agency communications protected by civil discovery privileges.

        For your information, Congress excluded three discrete categories of law enforcement
and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c)
(2018).  This response is limited to those records that are subject to the requirements of the
FOIA.  This is a standard notification that is given to all our requesters and should not be taken
as an indication that excluded records do, or do not, exist.

-2-

If you have any questions regarding this response, please contact Julie Straus Harris of the Department's Civil Division, Federal Programs Branch, at 202-353-7633.

Sincerely,

Jonathan Breyan
Senior Supervisory Attorney
<u>for</u>
Vanessa R. Brinkmann
Senior Counsel

Enclosures



**U.S. Department of Justice**

_Washington D.C. 20530_

March 24, 2019

MEMORANDUM FOR THE ATTORNEY GENERAL

THROUGH:        THE DEPUTY ATTORNEY GENERAL

FROM:             Steven A. Engel
                     Assistant Attorney General, Office of Legal Counsel

                     Edward C. O'Callaghan
                     Principal Associate Deputy Attorney General

SUBJECT:        Review of the Special Counsel's Report

      At your request, we have evaluated Volume II of the Special Counsel's Report on the Investigation into Russian Interference in the 2016 Presidential Election to determine whether the facts recited therein would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution, **(b) (5)**

      For the reasons stated below, we conclude that the evidence described in Volume II of the Report is not, in our judgment, sufficient to support a conclusion beyond a reasonable doubt that the President violated the obstruction-of-justice statutes.[1] **(b) (5)**

Accordingly, **(b) (5)** we would recommend, under the Principles of Federal Prosecution, that you decline to commence such a prosecution.

**(b) (5)**

---

1    Given the length and detail of the Special Counsel's Report, we do not recount the relevant facts here. Our discussion and analysis assumes familiarity with the Report as well as much of the background surrounding the Special Counsel's investigation.

(b) (5)

(b) (5)

(b) (5)

(b) (5)

(b) (5)

(b) (5)

(b) (5)

Subject: *Review of Special Counsel's Report*
Page 9

RECOMMENDATION:  We recommend that you conclude that, under the Principles of Federal Prosecution, the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense.

APPROVE: _____  DATE: 3/24/2019

DISAPPROVE: _____  DATE: _____

OTHER: _____