**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

  v.

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

Case No. 1:19-cv-1552 (ABJ)

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
RENEWED MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.       DOJ PROPERLY WITHHELD MATERIAL UNDER FOIA EXEMPTION 5 ............... 2

         A.      Plaintiff's Argument that the Attorney General Lacked Authority to Make
                 a Decision is Wholly Irrelevant. .............................................................. 3

         B.      Plaintiff Offers Nothing Beyond Its Own Speculation That The Attorney
                 General Was Not Engaged in a Prosecutorial Decision-Making Process
                 When The Documents Were Drafted. ......................................................... 4

         C.      DOJ Adequately Demonstrated that the Documents Are Protected by the
                 Deliberative Process Privilege. ................................................................ 8

                 1.      The Documents Are Pre-decisional and Deliberative. ................................ 8

                         a.      Document no. 6 ............................................................. 8

                         b.      Document no. 15 .......................................................... 11

                 2.      DOJ Has Adequately Demonstrated Foreseeable Harm. ......................... 15

         D.      DOJ Adequately Demonstrated that the Documents Are Protected by the
                 Attorney-Client Privilege. ...................................................................... 17

         E.      In Camera Review is Unwarranted and Unnecessary. ............................... 20

II.      THE COURT SHOULD DISMISS COUNT II FOR LACK OF JURISDICTION. ........ 22

CONCLUSION .............................................................................................................. 23

## INTRODUCTION

This case concerns the treatment under the FOIA[1] of two documents that are at the heart of the protections provided by FOIA's Exemption 5. DOJ withheld in full the first document—Document no. 6, a never-finalized draft legal analysis prepared by the OLC AAG for his use in providing advice within DOJ and to the Attorney General—and released with redactions the other—Document no. 15, a memorandum containing legal advice and prosecutorial deliberations from the OLC AAG and the PADAG that was prepared for and submitted to the Attorney General to assist him in his decision-making. Pre-decisional, deliberative documents of this nature are clearly covered by the deliberative process privilege, as the D.C. Circuit has "long recognized." *EPIC v. DOJ*, 584 F. Supp. 2d 65, 75 (D.D.C. 2008) (*EPIC*) (citing *Brinton v. Dep't of State*, 636 F. 2d 600, 604 (D.C. Cir. 1980), and *Coastal States Gas Corp. v. Dep't of Energy*, 617 F. 2d 854, 868 (D.C. Cir. 1980)). Moreover, given their content (legal advice or legal advice and prosecutorial deliberations), author or co-author (OLC, as legal counsel to the Attorney General), and audience (the Attorney General, as client), the documents are protected by "the oldest of the privileges for confidential communications known to the common law": the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Notwithstanding the deference owed to an agency's affidavits in support of summary judgment in cases brought under the FOIA, *see*, *e.g.*, *Shapiro v. United States Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018), Plaintiff challenges the Defendant's withholdings based only on Plaintiff's own speculation that the Attorney General was not, at the time the documents at issue were developed, in the midst of a prosecutorial decision-making process. Plaintiff's

---

[1] All abbreviations correspond to those in Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment and Renewed Motion to Dismiss (Defs.' Mem.), ECF No. 15-2.

speculation—which is grounded in Plaintiff's incorrect reading of DOJ's special counsel regulations, and which is the basis for virtually all of Plaintiff's substantive arguments that the two documents are not protected from disclosure by FOIA's Exemption 5—is irrelevant in this FOIA case and insufficient to support its claim for summary judgment or to contest Defendant's claim for summary judgment. Plaintiff's remaining challenges to the withholdings—that DOJ has not provided sufficient information to determine that the deliberative process and attorney-client privileges apply to Document nos. 6 and 15, and that DOJ has not adequately demonstrated the foreseeable harm from disclosure of either document—are not supported by the record, including the Second Declaration of Paul P. Colborn, filed together with this response. And even if this Court were to find that the present record does not suffice, Plaintiff itself has failed to demonstrate that the "disfavored" remedy of *in camera* review is warranted or preferable over the available recourse of allowing the agency to supplement its explanations.

Finally, since Plaintiff "no longer contests" the issue raised in Count II of the Complaint, DOJ's renewed motion to dismiss that Count must be granted. There is no legal basis for Plaintiff's suggestion that the Court should "not rule" on Defendant's motion, and doing so would leave unresolved a claim that is currently ripe for disposition.

For all of these reasons, and those provided in Defendant's opening memorandum, summary judgment should be granted to Defendant and denied to Plaintiff as to Count I of the Complaint, and Count II of the Complaint should be dismissed.

## ARGUMENT

## I.      DOJ PROPERLY WITHHELD MATERIAL UNDER FOIA EXEMPTION 5.

Plaintiff challenges DOJ's treatment, under the FOIA, of two documents, one released in redacted form and one withheld in full. Plaintiff's arguments that the withheld material is not

protected from disclosure by FOIA's Exemption 5 all flow from a single irrelevant and unsupported premise: that the Attorney General lacked authority to make a prosecutorial decision regarding whether the evidence developed by Special Counsel Mueller's investigation was sufficient to establish that the President had committed an obstruction-of-justice offense.  Even if this were true, Plaintiff identifies no case law supporting their theory that the privileges do not apply in a FOIA case if a decisionmaker lacks authority to make a given decision.  And Plaintiff identifies no law or regulation actually constraining the Attorney General's decision-making authority.  Nor does Plaintiff offer anything other than its own speculation that the Attorney General was not in the midst of a prosecutorial decision-making process.  Plaintiff's speculation is insufficient to overcome the deference due to the agency's declarations and, accordingly, summary judgment must be entered for DOJ.

> **A.  Plaintiff's Argument that the Attorney General Lacked Authority to Make a Decision is Wholly Irrelevant.**

In response to Defendant's motion for summary judgment and the Colborn and Brinkmann declarations attached thereto, Plaintiff argues that neither the deliberative process privilege nor the attorney-client privilege could apply to the two challenged documents.  According to Plaintiff, by the time those documents were written, "there simply was no "'decision-making process[] as it relates to the findings of the [Special Counsel's] investigation"[']" in which the Attorney General was engaged, "[n]or any other 'related prosecutorial decisions'" for the Attorney General to make. Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Renewed Mot. to Dismiss & Cross-Mot. for Summ. J. (Pl.'s Br.) 13, ECF No. 16 (quoting Def.'s Mem. 14).

As an initial matter, Plaintiff's argument is well outside the scope of a FOIA dispute.  The relevant questions for the availability of the deliberative process and attorney-client privileges under Exemption 5 in a FOIA suit are (1) whether the materials were predecisional and deliberative

and (2) whether the materials contained client confidences transmitted in the course of seeking or providing legal advice.  A case seeking documents under FOIA is not the proper vehicle for a court to consider whether the decisionmaker was properly authorized to make a given decision, and Plaintiff's attempt to convert this FOIA case into a place for challenging the Attorney General's authority to make the decision should be summarily rejected.

Plaintiff offers no case law suggesting the opposite, and a court in this district has rejected this very argument.  *See Competitive Enter. Inst. v. United States Dep't of Treasury*, 308 F. Supp. 3d 109, 118 (D.D.C. 2018) (rejecting argument that Exemption 5 is unavailable for deliberations about possibly imposing a carbon tax when the agency has no statutory authority to impose such a tax because "the need for staff to speak candidly and confidentially is perhaps most important when the discussion concerns unmapped and unexplored terrain at the border of agency authority").  At least one circuit court of appeals has agreed.  *See Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 376 (7th Cir. 2004) ("Deeming internal discussions unprotected by the deliberative process privilege because, in retrospect, it appears that the agency was considering proposals that were beyond the scope of its authority to implement might well discourage the kind of frank and appropriate policymaking discussions that the privilege was meant to protect and promote.").

**B.      Plaintiff Offers Nothing Beyond Its Own Speculation That The Attorney General Was Not Engaged in a Prosecutorial Decision-Making Process When The Documents Were Drafted.**

Even if this Court is willing to consider Plaintiff's argument, the argument still fails. Plaintiff offers no evidence that the Attorney General actually made his own final prosecutorial

determination before receiving and considering the advice contained within the withheld material.[2]

Rather, Plaintiff's argument hinges instead on Plaintiff's own conclusion that the Special Counsel

regulations left "no remaining decisions or actions for the Attorney General to make as to the

President and whether or not he had obstructed justice" on March 24, 2019.  Pl.'s Br. 12.  In support

of this conclusion, Plaintiff cites 28 C.F.R. § 600.7(b), which provides, in relevant part:

> The Special Counsel shall not be subject to the day-to-day supervision of any
> official of the Department. However, the Attorney General may request that the
> Special Counsel provide an explanation for any investigative or prosecutorial step,
> and may after review conclude that the action is so inappropriate or unwarranted
> under established Departmental practices that it should not be pursued. . . . If the
> Attorney General concludes that a proposed action by a Special Counsel should not
> be pursued, the Attorney General shall notify Congress as specified in §
> 600.9(a)(3).

As Plaintiff notes, consistent with this provision, the Attorney General advised Congress by letter

dated March 22, 2019 that "[t]here were no . . . instances [for which the Attorney General

'request[e]d that the Special Counsel provide an explanation for any investigative or prosecutorial

step, . . . [or] conclude[d] that the action is so inappropriate or unwarranted under established

Departmental practices that it should not be pursued,' 28 C.F.R. § 600.7(b),] during the

investigation."  Pl.'s Br. 3, 12.

The foregoing is the sole basis for Plaintiff's conclusion that "by the time OLC submitted

---

[2] Although the March 24, 2019 letter informing Congress of the Attorney General's decision was finalized before Document No. 15 was finalized, *see* 2d Colborn Decl. ¶ 9, the Attorney General had the benefit of the substance of the advice contained in Document no. 15 prior to his making the relevant decision because he had reviewed drafts of the document. *Id.*  Moreover, the language from *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 442 F. Supp. 3d 37, 48 (2020), that Plaintiff repeatedly recites as reflecting that court's "characteriz[ation]" of the Attorney General's actions is not—contrary to Plaintiff's misleading quotation and citation—that court's own language. *See*, *e.g.*, Pl.'s Br. 1.  Rather, the quoted "characterization" was made by the plaintiff in that case. Another FOIA plaintiff's unsubstantiated allegations about an agency's actions are not sufficient to cast doubt on the agency's response to a different FOIA request or declarations in support of that response.

its memo to the Attorney General on March 24, 2019, there were no remaining decisions or actions for the Attorney General to make as to the President and whether or not he had obstructed justice." Pl.'s Br. 12.  This proffered conclusion flows from Plaintiff's interpretation of the Mueller Report as having "proposed [an] action" as to President Trump.  But as Plaintiff notes, on the question of "whether to charge the President with obstruction of justice[,] . . . the Special Counsel 'determined not to make a traditional prosecutorial judgment.'"  Pl.'s Br. 11 (quoting Mueller Report, Vol. II at 1, 182).  In that regard, 28 C.F.R. § 600.7(b) imposed on the Attorney General no obligation to "request[] that the Special Counsel provide an explanation for any investigative or prosecutorial step," because the Special Counsel's Report explicitly states that the Special Counsel did not take any "prosecutorial step" as to the President.  Mueller Report, Vol. II at 182 ("Because we determined not to make a traditional prosecutorial judgment, we did not draw ultimate conclusions about the President's conduct."); *id.* ("[I]f we had confidence after a thorough investigation of the facts that the President clearly did not commit obstruction of justice, we would so state.  Based on the facts and the applicable legal standards, we are unable to reach that judgment."); *id.* ("[W]hile this report does not conclude that the President committed a crime, it also does not exonerate him.").[3]

Similarly, because the Special Counsel's Report explicitly states that the Special Counsel was not "propos[ing any] action" as to the President, 28 C.F.R. § 600.7(b)'s requirement that the

---

[3] For this reason, the recent decision in *Electronic Privacy Information Center v. U.S. Department of Justice*, No. CV 19-810 (RBW), 2020 WL 5816218, at *16 (D.D.C. Sept. 30, 2020), is readily distinguished.  In that case, the court held that DOJ improperly applied Exemption 5 to withhold information from Volume I of the Mueller Report, on the basis that the withheld information is not pre-decisional because it reflects charging decisions actually made by Special Counsel Mueller. *Id.*  By contrast, here, as to whether the evidence established that the President could be charged with obstruction—the decision for which the documents at issue in this case were provided to the Attorney General to aid in his deliberations—Volume II of the Mueller Report makes clear that the Special Counsel did not make a decision.  Mueller Report, Vol. II at 182.

Attorney General notify Congress if he "concludes that a proposed action by a Special Counsel should not be pursued," would not be triggered by the Attorney General's undertaking of an independent prosecutorial decision as to the President.  Thus, no limitations or obligations could have been triggered as to a prosecutorial action or decision regarding the President because the Special Counsel took no such action or decision regarding the President and thus there was no action or decision to be countermanded.

To the contrary, as this Court held in *United States v. Manafort*, 312 F. Supp. 3d 60, 70 (D.D.C. 2018), under the very regulations Plaintiff cites, "a Special Counsel remains subject to oversight by the Attorney General."  Moreover, as this Court noted, when issuing the Special Counsel regulations, including 28 C.F.R. §§ 600.6 and 600.7, the Department explained that even when

> a Special Counsel [is] appointed to investigate and, if appropriate, prosecute matters when the Attorney General concludes that . . . the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice . . . it is intended that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General.

*Manafort*, 312 F. Supp. 3d at 70 (quoting Dep't of Justice, Final Rule, 64 Fed. Reg. 37,037, 37,038 (July 9, 1999)).  And even if 28 C.F.R. § 600.7(b) does impose some limitation on the circumstances in which the Attorney may "countermand" actions or decisions by the Special Counsel, no part of the Special Counsel regulations deprives the Attorney General of ultimate authority to otherwise institute or decline a prosecution.  *See United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 611 (D.D.C. 2018), *appeal dismissed*, No. 18-3061, 2018 WL 5115521 (D.C. Cir. Sept. 17, 2018) (noting that while § 600.7(b) limits the Attorney General's authority to "countermand" actions by the Special Counsel, because the Special Counsel is removable at will, he remains subject to "the . . . Attorney General's plenary supervision").

For all of these reasons, Plaintiff is simply wrong that the only authority the Attorney General had was to "reverse the Special Counsel's conclusions" under 28 C.F.R. § 600.7(b). And no evidence supports Plaintiff's assumption that, by his March 22, 2019 letter to Congress, the Attorney General had completed any decision-making related to the Special Counsel's investigation for which he had authority. Accordingly, Plaintiff fails to undermine the deference owed to, or otherwise discredit, the Colborn and Brinkmann declarations.

## C.    DOJ Adequately Demonstrated that the Documents Are Protected by the Deliberative Process Privilege.

### 1.    *The Documents Are Pre-decisional and Deliberative.*

#### a.    *Document no. 6*

In applying Exemption 5 to withhold Document no. 6 in full, DOJ appropriately determined that the document is protected by the deliberative process privilege. First, Document no. 6 is pre-decisional because it consists of "draft legal analysis prepared by [OLC AAG Engel] for his use in providing advice within the Department of Justice" and "was never developed into a final document." *See* Colborn Decl. ¶ 16, ECF No. 15-3. As a draft, it is quintessentially pre-decisional. *EPIC*, 584 F. Supp. 2d at 75. Plaintiff offers two arguments challenging the DOJ's representations that Document no. 6 is pre-decisional: (1) Document no. 6 is undated; and (2) "without any information on the subject matter of [Document no. 6] the Court . . . cannot ascertain whether it . . . relates to a decision legitimately within the purview of the Attorney General." Pl.'s Br. 14. As to the first argument, the Second Colborn Declaration clarifies that the undated Document no. 6 "was prepared over six months prior to March 2019," and "Mr. Engel provided a copy [of Document no. 6] to the Attorney General prior to March 24, 2019." 2d Colborn Decl. ¶ 5.

As to Plaintiff's second argument, the very fact that OLC determined that Document no. 6 is responsive to the Request makes at least some of the subject matter of the document clear. The

Request sought "all documents pertaining to the views OLC provided Attorney General William Barr on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense." Colborn. Decl., Ex. B at 1. OLC's designation of this document as responsive to this Request and its assertion that the document is protected from disclosure by the deliberative process privilege under Exemption 5 makes clear that Document no. 6 at least contains pre-decisional deliberative material about OLC's "views . . . on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense." In the event that there remains any doubt as to the decision and deliberative process to which Document no. 6 pertains, the Second Colborn Declaration provides additional detail. Mr. Colborn clarifies that Mr. Engel provided a copy of Document no. 6 to the Attorney General "for the purpose of giving legal advice and analysis to the Attorney General for his use in the deliberations that preceded the decision" by the Attorney General as to "whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution.'" 2d Colborn Decl. ¶¶ 5, 8. This additional detail makes clear that the document is pre-decisional.

Moreover, as DOJ established, because Document no. 6 contains "OLC legal advice and analysis," "confidential client information," and "descriptions of Department of Justice deliberations," Colborn Decl. ¶¶ 16, 20, the document is also deliberative. By virtue of this content, Document no. 6 would be protected by the deliberative process privilege even if it were not a draft, as "[t]he D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process and is protected by the deliberative process privilege." *EPIC*, 584 F. Supp. 2d at 75 (citing *Brinton*, 636 F. 2d at 604; and *Coastal States*, 617 F. 2d at 868); *see also*

*EPIC*, 584 F. Supp. 2d at 75 ("If OLC provides legal advice as part of a decision-making process, this legal advice is protected under the deliberative process privilege.").

In response, Plaintiff argues that "DOJ offers no description of the deliberative process to which [Document no. 6] pertained." Pl.'s Br. 16.[4] But this argument fails on the basis of the same record evidence that dooms Plaintiff's argument that the agency did not establish the pre-decisional nature of Document no. 6. *See supra* at 8-9 (noting that the fact that OLC determined that Document no. 6 is responsive to the Request and asserted that the document is protected by the deliberative process privilege makes clear that the document contains pre-decisional deliberative material about OLC's "views . . . on whether the evidence developed by Special Counsel Robert Mueller is sufficient to establish that the President committed an obstruction-of-justice offense"); *id.* (citing the Second Colborn Declaration ¶¶ 5, 8, as stating that Mr. Engel provided a copy of Document no. 6 to the Attorney General "for the purpose of giving legal advice and analysis to the Attorney General for his use in the deliberations that preceded the decision" by the Attorney General as to "whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution'"). Accordingly, Plaintiff's arguments that the agency has not

---

[4] Plaintiff's suggestion that, "without this information"—which DOJ has provided and, now, supplemented—"the Court cannot properly conclude that the process to which Document 6 pertains was undertaken in the proper exercise of legal authority the Attorney General actually enjoys," Pl.'s Br. 16, misunderstands the respective burdens on the parties moving for summary judgment in a FOIA action. It is the agency's affidavits to which the Court defers, *see, e.g.*, *Shapiro*, 893 F.3d at 799 ("an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'"); *SafeCard Servs., Inc. v. Sec. Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); to controvert those affidavits, the Plaintiff bears the burden of bringing forward evidence, *see, e.g.*, *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions.").

adequately demonstrated the Document no. 6 is both pre-decisional and deliberative fail.

b.      *Document no. 15*

DOJ also appropriately determined that some material in Document no. 15 is protected by the deliberative process privilege when it applied Exemption 5 to withhold portions of that document.  First, the material redacted in Document no. 15 reflects pre-decisional advice.  As the Colborn Declaration makes clear, the document contains the authors' "candid analysis and advice" provided to the Attorney General "*prior to his final decision*" on that very issue.  Colborn Decl. ¶ 21 (emphasis added); *see also Coastal States Gas Corp.*, 617 F.2d at 866 (a document is "predecisional" if it was "generated before the adoption of an agency policy").  Moreover, the released material on page 1 of the memorandum indicating that the advice contained in the memorandum was submitted to the Attorney General to "*assist him in determining* whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution,'" Colborn Decl. ¶ 17, makes apparent its pre-decisional nature.  *See, e.g.*, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (a pre-decisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision).  This is so even if the document is finalized after a decision is made, as long as the document memorializes pre-decisional advice.  *See, e.g.*, *Appleton v. Food and Drug Admin*., 451 F. Supp. 2d 129, 144 n.9 (D.D.C. 2006).

Without any basis for asserting such an argument in a FOIA case, Plaintiff offers only one ground on which to challenge the agency's representations that the document is pre-decisional: that the decision to which the agency claims the document relates "was a decision within the purview of the Special Counsel, not the Attorney General."  Pl.' Br. 13.  Once again, this argument

is wholly irrelevant to this FOIA case, and should be dismissed out of hand.  *See supra* I.A.  And even if it were valid, Plaintiff's argument is based solely on its reading of the governing regulations which, as explained *supra* I.B, is meritless.  Rather, as the Brinkmann Declaration stated, the "determination as to whether the President committed an obstruction-of-justice offense was left to the purview of the Attorney General."  Brinkmann Decl. ¶ 11, ECF No. 15-4.[5]  Accordingly, Plaintiff has failed to meaningfully contest the agency's assertions that Document no. 15 is pre-decisional.

Second, the material withheld from Document no. 15 is deliberative.  As the Colborn Declaration explained, the withheld portions contain the authors' legal advice and prosecutorial

_____

[5] Plaintiff's suggestion that this statement in the Brinkmann Declaration cannot be credited because Ms. Brinkmann "is responsible for supervising the FOIA requests her office handles that are subject to litigation, . . . not making a legal determination on the scope of the Attorney General's authority vis-à-vis the Special Counsel or interpreting the DOJ's special counsel regulations," Pl.'s Br. 13, both misunderstands the relevant question in a FOIA case and ignores that, elsewhere in her declaration, Ms. Brinkmann testified: "I make the statements herein on the basis of personal knowledge and on information acquired by me in the course of performing my official duties, including my discussions with knowledgeable Department personnel."  Brinkmann Decl. ¶ 3.  This type of testimony is both acceptable and common in summary judgment proceedings for claims under the FOIA.  *See, e.g.*, *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510 (D.D.C. 2015) (holding that a FOIA declarant "may make a decision [regarding the applicability of FOIA exemption] based in part on information obtained in the course of his official duties without triggering a need for additional declarations from the individuals he consulted"); *Cucci v. DEA*, 871 F. Supp. 508, 513 (D.D.C. 1994) (finding that declarant "had the requisite personal knowledge based []on her examination of the records and her discussion with a representative of the [state police]" to attest that information was provided with express understanding of confidentiality and, accordingly, should be withheld under FOIA Exemption 7).  Moreover, Defendant has, elsewhere than the Brinkmann Declaration, demonstrated that Document nos. 6 and 15 contain OLC and ODAG pre-decisional, deliberative legal advice and analysis, were prepared for the purpose of giving legal advice and analysis to the Attorney General for his use in the deliberations as to "whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution,'" and that the substantive advice and analysis contained therein were provided to the Attorney General to assist him in making that determination.  Colborn Decl. ¶¶ 16, 17, 20; 2d Colborn Decl. ¶¶ 4-5, 8.  There can be no dispute that Mr. Colborn is competent to testify as to these facts.  *See* Colborn Decl. ¶ 1; 2d Colborn Decl. ¶¶ 1-2.

deliberations in support of the authors' recommendation to the Attorney General as to "whether the facts set forth in Volume II of Special Counsel Mueller's report 'would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution,'" Colborn Decl. ¶ 17, and is thus quintessentially deliberative.[6] *See, e.g.*, *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) (a document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes recommendations or expresses opinions on legal . . . matters"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d 260, 274–75 (D.D.C. 2014) ("[T]he fact that the authors of these documents were lawyers whose role is to provide legal advice also confirms that these records were deliberative."); *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 9 (D.C. Cir. 2014) ("There can be no doubt that . . . legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5." (citing *Brinton,* 636 F.2d at 604)); *EPIC*, 584 F. Supp. 2d at 75 ("the D.C. Circuit has long recognized that legal advice is an integral part of the decision-making process and is protected by the deliberative process privilege.").  Moreover, as a memorandum containing analysis about whether evidence supports initiating or declining a prosecution, Document no. 15 fits neatly within a broader category of documents that are generally protected by the deliberative process privilege.  *See* Def.'s Mem. 16 (citing cases, such as *Gov't Accountability Project v. U.S. DOJ*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012), holding that deliberative process privilege applies to communications "related to, and preced[ing] a final decision by the DOJ not to pursue prosecution of a case").

Plaintiff's arguments in response rest only on its misinterpretation of the DOJ special

---

[6] The portions of Document no. 15 released to Plaintiff indicate that the memorandum contains a recommendation from the authors to the Attorney General, making the document's deliberative nature apparent.  Colborn Decl. ¶ 17.

counsel regulations and its own irrelevant speculation, *see supra* I.A.-B., unsupported by admissible evidence, that the Attorney General was not engaged in "a legitimate decision on whether to initiate or decline prosecution of the President for obstructing justice." Pl.'s Br. 15.  As explained *supra* at I.B., under the relevant regulations, "ultimate responsibility" for matters investigated by a special counsel "rest with the Attorney General."  *Manafort*, 312 F. Supp. 3d at 70 (quoting 64 Fed. Reg. at 37,038); *see also Concord Mgmt. & Consulting*, 317 F. Supp. 3d at 615 (noting that while § 600.7(b) limits the Attorney General's authority to "countermand" actions by the Special Counsel, the Special Counsel remains subject to "the . . . Attorney General's plenary supervision").  In particular, because the Special Counsel took no prosecutorial action or decision regarding the President, there was no action or decision to be countermanded.  Thus, none of the limitations or obligations of 28 C.F.R. § 600.7(b) were triggered as to whether or not to charge the President.  Accordingly, the Attorney General's March 22, 2019 letter to Congress provides no evidence supporting Plaintiff's view that the Attorney General had completed any decision-making related to the Special Counsel's investigation for which he had authority by that date.  For all of these reasons, Plaintiff's supposition that Document no. 15 "was not part of a deliberation about whether or not to prosecute the President," Pl.'s Br. 16, cannot overcome the deference to the agency's affidavits.  *See Carter*, 830 F.2d at 393 (without "tangible evidence of bad faith . . . the court should not question the veracity of agency submissions"); *see also Shapiro*, 893 F.3d at 799 (court will defer to agency's affidavits unless they are "contradicted by contrary evidence in the record or by evidence of the agency's bad faith").[7]

---

[7] Although Plaintiff cites *Coastal States Gas Corp.*, 617 F.2d at 866, for the proposition that a document that "is predecisional at the time it is prepared" can, in some circumstances, "lose" its "predecisional . . . status," Pl.'s Br. 10, Plaintiff makes no assertion and offers no evidence that the Attorney General expressly adopted, whole cloth, the analysis in Document nos. 6 or 15.  Nor does

## 2.    *DOJ Has Adequately Demonstrated Foreseeable Harm.*

Plaintiff does not meaningfully contest DOJ's articulations of harm that would flow from disclosure of the withheld material in Document nos. 6 and 15.  While Plaintiff claims that these articulations are only "boilerplate" and "fail to satisfy the foreseeable harm showing that the FOIA requires," Pl.'s Br. 17, recent D.C. Circuit precedent makes clear that statements of the type DOJ has provided here suffice.  As that court recently explained, an agency will satisfy the "governing legal requirement," if it explains that it has "specifically focused on 'the information at issue' in the [records] under review, and . . . concluded that disclosure of that information 'would' chill future internal discussions."  *Machado Amadis*, 971 F.3d at 371; *see also Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. CV 17-0832 (CKK), 2020 WL 5593930, at *5 (D.D.C. Sept. 18, 2020) (finding agency's affidavit satisfied the foreseeable harm standard where affidavit "identifies the content of the withheld documents . . . affirmatively concludes that these documents 'would reveal [the agency's pre-decisional deliberations,] . . . [and] specifically connects the disclosure of these drafts to a tangible chilling effect" (citing *Machado Amadis*, 971 F.3d at 371)).

Like it did in *Judicial Watch* and *Machado Amadis*, DOJ has satisfied the "governing legal

---

Plaintiff have any evidence as to the specific reasoning for the Attorney General's final determination as to the prosecutorial decision posed by the Mueller Report.  Thus, Plaintiff cannot establish that these documents have "lost" their "predecisional . . . status."  *Accord Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment.  To the contrary, the Supreme Court has held that the deliberative-process privilege protects recommendations that are approved or disapproved without explanation.").  Paragraph 9 of the Colborn Declaration does not change this analysis.  As Mr. Colborn explained, "the Attorney General had received the substance of the advice contained in the Document no. 15 [prior to sending the letter to the House and Senate Judiciary Committees in which announced his decision publicly], and had reviewed multiple drafts of the memorandum," and the "substance of the advice contained in Document No. 15 did not change in any material way between the time when the Attorney General last received a draft of the memorandum and the time the Attorney General initialed the approval box on the signed final form of the memorandum."  2d Colborn Decl. ¶ 9.

requirement" here.  As in *Machado Amadis*, the Second Colborn Declaration describes the content of the withheld documents.  *See* 2d Colborn Decl. ¶ 12 (explaining that "Document no. 6 contains draft legal advice and analysis concerning the Attorney General's prosecutorial decision regarding the President for the Attorney General to use in his deliberations on that decision," and "Document no. 15 contains legal advice and prosecutorial deliberations supporting the recommendation in favor of a conclusion that 'the evidence developed by the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense'").  Also as in *Machado Amadis*, the Second Colborn Declaration concludes that disclosure of these documents "would reveal that non-final legal advice" in Document no. 6 and "would reveal th[e] deliberations and th[e] advice" in Document no. 15.  2d Colborn Decl. ¶ 12.  And finally, the Second Colborn Declaration explicitly connects the disclosure of Document nos. 6 and 15 to a "tangible chilling effect," *Judicial Watch*, 2020 WL 5593930 at *5: it would "discourage OLC attorneys from candidly deliberating on the preparation of their legal analysis and recommendations and impair the ability of Attorneys General to receive candid and confidential legal and other types of advice in the course of their consideration of prosecutorial decisions and other decisions."  2d Colborn Decl. ¶ 13; *see also id.* ¶ 12 (noting that disclosure would "undermine the ability of OLC attorneys to develop legal theories and analysis and commit them to writing without the fear of compelled public disclosure," and "directly undermine the Attorney General's ability to seek and receive high-quality, candid advice regarding sensitive prosecutorial matters submitted to him for decision").  As Mr. Colborn notes, "[s]uch chilling of this type of candid confidential advice is exactly what the deliberative process and attorney-client privileges seek to prevent."  *See also Machado Amadis*, 971 F.3d at 371 ("[C]hilling of candid advice is exactly what the privilege seeks to prevent.").  These explanations, which "specifically focus[] on 'the information at issue' in the

[records] under review" and "conclude[] that disclosure of that information 'would' chill future internal discussions," satisfy Defendant's legal obligations with respect to the foreseeable harm showing that the FOIA requires when the deliberative process privilege is invoked.  *Machado Amadis*, 971 F.3d at 371.[8]  Plaintiff's only remaining argument—that there can be no foreseeable harm from disclosing the material withheld here because that material was used for the exclusive purpose of "misrepresenting the Special Counsel's findings to Congress and the public," Pl.'s Br. 17—must be rejected for the reasons already explained *supra*.  Plaintiff has only its misinterpretation of the DOJ special counsel regulations and its own irrelevant speculation, unsupported by admissible evidence, that "the Attorney General was not seeking legal advice from OLC in order to make a prosecution decision."  Pl.'s Br. 17.  This cannot overcome the deference to the agency's affidavits.  *See Shapiro*, 893 F.3d at 799; *Carter*, 830 F.2d at 393.

### D. DOJ Adequately Demonstrated that the Documents Are Protected by the Attorney-Client Privilege.

Because DOJ properly concluded that Document no. 6 and the material withheld from Document no. 15 are protected from disclosure under the deliberative process privilege, the Court need not reach the question of whether they were also properly withheld under the attorney-client privilege.  *See, e.g.*, *Judicial Watch*, 20 F. Supp. 3d at 276.  But the Court may grant summary

---

[8] Although Plaintiff's discussion of Defendant's foreseeable harm showing appears limited to the agency's invocation of the deliberative process privilege, and not to its invocation of the attorney-client privilege, this reasoning applies equally to both privileges.  Specifically with respect to the attorney-client privilege, the candid advice contained in Document nos. 6 and 15 is legal advice, and the identified chilling effects that would reasonably result from disclosure of these documents includes "discourag[ing] OLC attorneys from candidly deliberating on the preparation of their legal analysis and recommendations and impair[ing] the ability of Attorneys General to receive candid and confidential legal and other types of advice in the course of their consideration of prosecutorial decisions and other decisions."  2d Colborn Decl. ¶ 13.  "Such chilling of [this type of candid confidential] advice . . . is exactly what the deliberative process and *attorney-client privileges* seek to prevent."  *Id.* (emphasis added).

judgment for DOJ on the alternative basis that the material was appropriately withheld on this ground.  As the Colborn and Brinkmann declarations make clear, Document nos. 6 and 15 were prepared by OLC for the purpose of providing legal advice to the Attorney General regarding whether the facts set forth in Volume II of Special Counsel Mueller's report "would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution."  *See* Colborn Decl. ¶¶ 16 (Document no. 6), 17 (Document no. 15), 22 (explaining that the OLC attorney authors had "been asked to provide legal advice" and that the documents "were prepared or revised by OLC attorneys in the course of carrying out OLC's role of legal adviser to the Attorney General and the Department of Justice"); Brinkmann Decl. ¶ 16 (explaining that the material in Document no. 15 withheld from release "contains OLC's and the PADAG's legal analysis and advice solicited by the Attorney General and shared in the course of providing confidential legal advice to the Attorney General").

Plaintiff offers two arguments in response.  The first repurposes its argument as to why the deliberative process privilege should not protect these documents: that the documents could not have been "prepared for the purpose of providing legal advice on the sufficiency of the evidence in the Special Counsel Report to support prosecuting the President for obstruction of justice" because "that decision" had been "entrusted to the Special Counsel, already . . . made and left undisturbed by the Attorney General."  Pl.'s Br. 19.  But for the reasons explained *supra* at I.A. and B., this argument must be rejected.  It is based on Plaintiff's misreading of the governing regulations and, as the Brinkmann Declaration stated, the "determination as to whether the President committed an obstruction-of-justice offense was left to the purview of the Attorney General."  Brinkmann Decl. ¶ 11; *see Carter*, 830 F.2d at 393 (without "tangible evidence of bad faith . . . the court should not question the veracity of agency submissions").  Moreover, the record

contains sufficient details to conclude that Document no. 6 was created for the purpose of furnishing legal advice.  As the Colborn Declaration makes clear, the document consists of "legal analysis submitted to the Attorney General as part of his decisionmaking," Colborn Decl. ¶ 20.  It was, like all of the material withheld in response to the Request, "prepared or revised by OLC attorneys in the course of carrying out OLC's role of legal adviser to the Attorney General and the Department of Justice," *id.* ¶ 22.

Plaintiff's second argument—that DOJ "failed to demonstrate that it did not share the information in the two documents with any third parties" or that "the two documents contain no facts from outside sources," Pl.'s Br. 19—fares no better.  The record provides ample evidence that both documents were maintained confidentially and exclusively within the Department of Justice.  *See*, *e.g.*, Colborn Decl. ¶ 3 ("OLC legal advice . . . is generally kept confidential."); *id.* ¶ 16 (Document no. 6 "contains *confidential client* information" (emphasis added)); *id.* ¶ 20 (Document no. 6 was "referred to *internally within OLC* . . . , and . . . later shared with *the Attorney General*" (emphasis added)); *id.* ¶ 21 (Document no. 15 was "submitted by *senior officials of the Department* to *the Attorney General*" (emphasis added)); *id.* ¶ 22 (describing all material withheld from release in response to the Request as "*confidential* legal advice" (emphasis added)).  And were there any question, Mr. Colborn has now affirmatively clarified that neither Document no. 6, nor the withheld portions of Document no. 15 have been "shared outside of the Department of Justice."  2d Colborn Decl. ¶¶ 6, 10.

Additionally, the record demonstrates that neither document contains any facts that would undermine the privileged nature of the document.  *See* Colborn Decl. ¶ 25 (stating that the withheld material "do[es] not contain reasonably segregable, nonexempt information, beyond that already disclosed in document no. 15," and that "[a]ll factual information contained in the documents was

19

provided to OLC in confidence for the purpose of seeking legal advice from OLC and is inextricably intertwined with OLC's analysis").  Moreover, were there any question as to this point, Mr. Colborn has now affirmatively clarified that neither Document no. 6, nor the withheld portions of Document no. 15, "contain reasonably segregable, nonexempt information."  2d Colborn Decl. ¶¶ 7, 11.[9]

As Plaintiff offers nothing to overcome the deference to the agency's affidavits, summary judgment should be granted to DOJ.

### E.    In Camera Review is Unwarranted and Unnecessary.

In light of the showing Defendant has made in support of its motion for summary judgment, and Plaintiff's failure to rebut that showing, the Court should decline Plaintiff's request that the Court conduct *in camera* review.  *See* Pl.'s Br. 20.  "If the affidavits" produced by the agency "provide[s] specific information sufficient to place the documents [at issue] within the [relevant] exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."  *Hayden v. NSA/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Here, the Colburn and Brinkmann declarations provide sufficiently detailed information to show that the

_____

[9] Even if the Court were to disagree that Defendant had adequately demonstrated that Document nos. 6 and 15 do not contain "facts from outside sources," Pl.'s Br. 19, for the purposes of establishing the applicability of the attorney-client privilege, Defendant would still be entitled to summary judgment on the basis of its proper invocation of the deliberative process privilege to protect the withheld material.  *See, e.g.*, *Brinton*, 636 F.2d at 605-06 (noting that while the attorney-client privilege applies to "facts divulged by client to attorney" and "opinions from attorney to client based on those facts[,]" the "scope" of the deliberative process privilege "is broad enough to protect those facts intertwined with the opinions or tending to reveal the deliberative process"); *see also id.* at 606 ("In any FOIA case involving advisory memoranda from agency lawyers to agency decision-makers, either or both of these grounds of exemption may apply, depending on the circumstances.").

two documents fall within Exemption 5, and Plaintiff has identified nothing in the record to contradict that information nor suggested any bad faith on the part of the agency. *See supra* at I.C.-D. Accordingly, "*in camera* review is neither necessary nor appropriate." *Id.*

Moreover, should the Court conclude that any material portion of DOJ's submissions are insufficient, *in camera* review is not the proper remedy. *See Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (the court does not conduct *in camera* review "as a matter of course"). In the event the Court finds the current record insufficient to grant summary judgment, the proper course is to direct DOJ to provide supplemental information. *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993) (directing district court, on remand, to either require the agency to provide "a more specific affidavit" or to review the withheld documents *in camera*, but cautioning that "*in camera* review is generally disfavored" and is "'not a substitute' for the government's obligation to justify its withholding in publicly available and debatable documents" (citation omitted)); *Am. Oversight v. U.S. Gen. Servs. Admin.*, 311 F. Supp. 3d 327, 341 n.6 & 343-44 (D.D.C. 2018) (rejecting plaintiff's "suggested remedy of *in camera* review of the documents at issue," relying on D.C. Circuit's caution in *PHE*, 983 F.2d at 253, that such review "is generally disfavored," and instead ordering the agency to either produce the withheld material or submit a supplemental explanation in support of the withholdings); *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) ("Where an agency's declarations are insufficient . . . , courts generally will request that an agency supplement its supporting declarations[.]"); *Boehm v. FBI*, 948 F. Supp. 2d 9, 25, 28 (D.D.C. 2013) (declining to undertake *in camera* review, instead ordering the agency to submit "supplementation of the basis for the withholding").

And while the D.C. Circuit in *Quinon*, 86 F.3d at 1228, identified "the number of the withheld documents" as an "important[] factor" in considering whether *in camera* review is

appropriate, the court specifically described this as a "crude" factor. Seemingly more important to that consideration were the two other factors the D.C. Circuit identified: (1) "when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency"; and (2) "when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents[.]" *Id.* Neither of these "particularly appropriate" factors weighs in favor of *in camera* review here. First, the Colborn and Brinkmann declarations provide sufficient detail and Plaintiff offers nothing more than its own speculation as to bad faith. And second, Plaintiff's dispute as to the propriety of DOJ's withholdings "turns" exclusively on Plaintiff's proffered "interpretation[] of th[e] documents"—which, for the reasons described *supra* at I.A.-D., are groundless.[10] Accordingly, Plaintiff has failed to establish that the disfavored" remedy of *in camera* review is warranted here.

## II. THE COURT SHOULD DISMISS COUNT II FOR LACK OF JURISDICTION.

The Court no longer has jurisdiction over Count II—in which Plaintiff asserts that DOJ's denial of expedited processing was "contrary to the factual and legal showing CREW made demonstrating its entitlement to expedition," Compl. ¶ 20 (second paragraph numbered 20)—because Defendant has provided a complete response to the Request. Plaintiff does not disagree. Pl.'s Br. 21 (stating that Plaintiff "no longer contests the issue of expedition that the claim raises"). Confusingly, however, Plaintiff argues that, as a result of its concession, "the Court need not rule on DOJ's renewed motion to dismiss." *Id.*

Plaintiff is wrong about the effect of its "no longer contest[ing]" the issue in Count II. *Id.*

---

[10] Nor does the other case Plaintiff cites—*Rosenberg v. U.S. Department of Defense*, 342 F. Supp. 3d 62, 74 (D.D.C. 2018)—support Plaintiff's assertion that *in camera* review is warranted in these circumstances. While the court in *Rosenberg* did "conduct an *in camera* review of a representative sample of the documents at issue," *id.*, nowhere does it explain why such review was justified.

Where, as here, "events outrun the controversy such that the court can grant no meaningful relief, the case *must be dismissed* as moot." *Adams v. Judicial Council of Sixth Cir.*, No. CV 17-1894 (ABJ), 2020 WL 5409142, at *6 (D.D.C. Sept. 9, 2020) (emphasis added) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013) (explaining that under Article III's case-or-controversy requirement, if "an intervening circumstance" eliminates any actual conflict between the parties, "the action can no longer proceed and *must be dismissed* as moot" (emphasis added)). Accordingly, rather than decline to rule on Defendant's renewed motion to dismiss, the Court must grant that motion.[11]

## CONCLUSION

For the foregoing reasons and for the reasons provided in Defendant's opening memorandum, this Court should deny Plaintiffs' motion for summary judgement, grant summary judgment in Defendant's favor as to Count I of the Complaint, and dismiss Count II of the Complaint.

---

[11] Plaintiff does not propose an alternative means for the Court to resolve Count II should it accept Plaintiff's invitation and "not rule on DOJ's renewed motion to dismiss." Pl.'s Br. 21. As neither party has moved for summary judgment on Count II, declining to rule on the motion to dismiss would leave this claim unresolved and prevent the complete disposition of this case—for which it is currently ripe.

Dated:  October 7, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

/s/ *Julie Straus Harris*
JULIE STRAUS HARRIS (DC Bar # 1021928)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendant*