## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
           )
           Plaintiff, )
           )
           v. )       Civil No. 19-1552 (ABJ)
           )
U.S. DEPARTMENT OF JUSTICE, )
           )
           Defendant. )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A PARTIAL STAY PENDING APPEAL

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 4

ARGUMENT ......................................................................................................................... 5

   I.   Standards For Granting A Stay Pending Appeal. ................................................. 5

   II.   DOJ Has No Likelihood Of Success On The Merits. ......................................... 7

   III.   DOJ Will Suffer No Irreparable Harm To An Interest The FOIA Protects. ..................... 18

   IV.   A Stay Would Substantially Harm CREW And The Public. ......................................... 20

CONCLUSION ..................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Access Reports v. DOJ*, 926 F.2d 1192 (D.C. Cir. 1991) ............................................................... 13

*Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314 (D.C. Cir. 2018) ............................................................................................................................................. 6

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ............................ 16

*CREW v. DOJ*, 658 F. Supp. 2d 217 (D.D.C. 2009) ................................................................... 16

*Ctr. for Investigative Reporting ("CIR") v. CBP*, 436 F. Supp. 3d 90 (D.D.C. 2019) .......... 18, 20

*Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) ......................................... 6

*Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ........................................... 6

*EPIC v. DHS*, 2006 WL 6870435 (D.D.C. Dec. 22, 2006) ........................................................ 16

*EPIC v. DOJ*, 490 F. Supp. 3d 246 (D.D.C. 2020) .................................................................... 14

*EPIC. v. DOJ,* 442 F. Supp. 3d 37 (D.D.C. 2020) ..................................................................... 19

*Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ............................................... 13

*Judicial Watch, Inc. v. DOD*, 847 F.3d 735 (D.C. Cir. 2017) ..................................................... 17

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ......................................... 11, 15, 17

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261 (D.D.C. 2004) ...................... 17

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) ................. 19

*Londrigan v. FBI*, 670 F.2d 1164 (D.C. Cir. 1981) .................................................................... 17

*Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ............................................ 18

*McCammon v. United States*, 584 F. Supp. 2d 193 (D.D.C. 2008) ............................................... 6

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ..................... 15

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ................................................................... 11, 17

*New York Times Co. v. OMB*, 2021 WL 1329025 (D.D.C. Mar. 29, 2021) ........................... 14, 15

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................... 6, 7

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ...................................... 3, 13, 15

*Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) ............................................................ 14

*Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7 (2008) ................................... 6

*WP Co. LLC v. U.S. Small Business Admin.*, 2020 WL 6887623 (D.D.C. Nov. 24, 2020)...... 6, 20

**Other Authorities**

S. Rep. No. 114-4 (2015) ........................................................................................... 20

**Regulations**

White House Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg.

4683 (Jan. 21, 2009) ............................................................................................... 20

**INTRODUCTION**

With its stay motion the Department of Justice ("DOJ") has doubled down on its

mischaracterization of Attorney General William Barr's efforts to spin the findings of Special

Counsel Robert Mueller into a vindication of then-President Trump as a "prosecutorial" decision

protected from disclosure by the deliberative process privilege. While DOJ has belatedly agreed

to release part of the Office of Legal Counsel ("OLC") Memorandum at issue, it continues to

insist the rest remains subject to the protection of Exemption 5 of the Freedom of Information

Act ("FOIA") as a deliberative, predecisional document. In truth, as this Court implicitly

recognized, DOJ seeks to manufacture a decision-making process to hide from the public

Attorney General Barr's use of the powers of his office to protect the President.

This Court's succinct summary of DOJ's stay motion says it best. DOJ has now stated:

> that after he received the Special Counsel's report, the Attorney General was
> considering 'electing' to opine on the question of whether the facts in the Special
> Counsel's Report would support a criminal prosecution, determining 'what, if
> anything, to say to the public about that question' before releasing the Report to
> the public, and doing so with the understanding that any actual prosecution was
> constitutionally foreclosed.

Minute Order, May 25, 2021. In other words, DOJ has described a process in search of a

decision, and slapping the label "prosecutorial" on that process does not alter this conclusion.

DOJ's stay motion also rests on a shifting explanation of the process behind the creation

of the OLC Memorandum, but even this latest version provides no basis to question the legal and

factual conclusions this Court reached in its Memorandum Opinion of May 3, 2021 (Dkt. # 27)

("Mem. Op."). The continued misdirection and misrepresentations by DOJ do, however, further

bolster this Court's finding that both Attorney General Barr and the agency acted in bad faith by

submitting declarations and falsely arguing that the OLC Memorandum represents a

predecisional document intended to assist the Attorney General in making a prosecutorial decision. DOJ's newly expressed regret over what it terms any "confusion" its "imprecision in its characterization of the decisional process" caused, Def.'s Mot. For Partial Stay Pending App. and Mem. in Supp. (Dkt. # 32) ("Def.'s Mem.") at 1, does not alter the conclusion that no matter how worded, DOJ seeks to manufacture a decisionmaking process in search of a decision.

The Court's opinion in this matter leaves no room for argument on each of the fundamental questions that DOJ's stay motion must answer. Most critically, the government has no likelihood of success on the merits of its claim that Document 15—a memorandum prepared by the Office of Legal Counsel for then-Attorney General Barr—falls within the protection of Exemption 5. As the Court's *in camera* review of this document revealed, DOJ's description in three sworn declarations was false, omitted critical details, and "served to obscure the true purpose of the memorandum." Mem. Op. at 20. Those misleading declarations formed the framework for DOJ's legal arguments that Document 15 was both predecisional and protected by the attorney client privilege. Granting a stay in these circumstances not only would run contrary to the law and facts, but would sanction the government's mischaracterizations of the document at issue and its true purpose.

Just as troubling, DOJ seeks to avoid accountability for its litigation choices and misleading declarations by placing the blame on the Court for misunderstanding its arguments, misreading its proffered declarations, and misapplying governing case law on the meaning of "predecisional." *See, e.g.*, Def.'s Mem. at 5 (characterizing the Court's conclusion that the OLC Memorandum is not predecisional as "contrary to governing law" and "reflect[ing] a misunderstanding of the arguments the government was intending to make"). The Court's newly unredacted opinion, however, makes crystal clear that the Court understood precisely what DOJ

was up to and why. The *in camera* review revealed that DOJ undertook an analysis it "expressly understood to be entirely hypothetical," in order to "get[] a jump on public relations." Mem. Op. at 20, 24. And while the Court understood that in appropriate circumstances "internal deliberations about public relations efforts could be covered by the deliberative process privilege," where, as here, DOJ declined to raise that as a basis for its deliberative process claim, "[t]he Court [wa]s under no obligation" to assess the applicability of the privilege on those grounds. *Id.* at 21 n.11. As the Court explained,

> DOJ made a strategic decision to pretend as if the first portion of the memorandum was not there and to avoid acknowledging that what the writers were actually discussing was how to neutralize the impact of the Report in the court of public opinion.

*Id.*

DOJ also faults the Court for committing legal error in deeming the OLC Memorandum postdecisional based "exclusively on the timing of th[e] memorandum's preparation relative to the preparation of the letter to Congress." Def.'s Mem. at 10. To the contrary, the Court engaged in a careful, fact-bound analysis of the "function of the document[]" and "the context of the administrative process which generated it" as the law requires. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975). From this the Court properly concluded that "contemporaneous emails" in the evidentiary record "undermined" the agency declarants' "uninformed assertions" that the OLC Memorandum was predecisional. Mem. Op. at 26-28.

DOJ also fails to satisfy the harm requirement for a stay pending appeal because the harm DOJ claims it will suffer absent a stay flows not from any interest the FOIA legitimately protects, but instead from DOJ's parochial interest in preventing embarrassing information from becoming public that would cast the agency and individual agency actors in a bad light, and "call[] into question the accuracy of Attorney General Barr's March 24 representation to

Congress" about the nature of the so-called "advice" he received from OLC. Mem. Op. at 22. By contrast, continuing to deprive the public of critical information to evaluate the conduct of former Attorney General Barr and former President Trump, who still plays an outsize role on the political stage and has yet to be held accountable for his many misdeeds in and since leaving office, would cause harm to Plaintiff and the public. Under any analysis, the public interest in disclosure outweighs any interest DOJ has in continuing to keep this information secret.

At bottom DOJ has failed to identify any good reason for keeping this document secret, because there is none. As this Court concluded, "[it] is time for the public to see" Document 15. Mem. Op. at 4. DOJ's motion for a stay should therefore be denied.

## FACTUAL BACKGROUND

While the Court is familiar with the facts of this case, several merit mention in the context of the government's stay motion, as they illustrate how DOJ has vigorously sought to prevent the public from learning about the contents of Document 15 from the outset of this litigation and continues that battle through its stay motion. First, DOJ initially moved to dismiss Plaintiff's claim challenging DOJ's denial of expedited processing, arguing against the weight of authority that Plaintiff was required to exhaust administrative remedies before filing suit. Litigation on that issue consumed over six months, during which Plaintiff was denied the benefit of expedited processing on a FOIA request of great public interest. The Court denied DOJ's motion to dismiss on January 31, 2020, holding that "administrative exhaustion was not required" and that "DOJ's denial [of CREW's expedition request] was not the product of reasoned decision making." Memorandum Opinion (Dkt. # 10) at 2.

Second, DOJ did not complete processing CREW's request until June 17, 2020, more than one year after CREW submitted the request. *See* Exhibit A to Declaration of Vanessa R.

Brinkman (Dkt. # 15-4); Mem. Op. at 3. Motions on summary judgment followed, and by the time this Court issued its Memorandum Opinion and Order that are the subject of DOJ's stay motion more than two years had elapsed since CREW first submitted its expedited FOIA request to DOJ. DOJ's stay motion represents yet another effort to delay its disclosure obligations under the FOIA.

Third, DOJ "strongly resisted" the Court's *in camera* review of the document, Mem. Op. at 23, a review that revealed the extent to which DOJ declarants had misrepresented the factual basis for the agency's deliberative process claim. When confronted with the evidence of those misrepresentations, DOJ did not withdraw the false and misleading declarations. Nor did the agency move for reconsideration explaining why the Court had erred both legally and factually, even after the Court highlighted for DOJ its failure to raise certain legal arguments. Instead, DOJ waited until after it had filed a notice of appeal and moved for a stay, only then raising for the first time extra-record factual arguments and legal arguments that attempt to recast the basis for its deliberative process claim. *See* Minute Order, May 25, 2021 (noting DOJ's attempts to raise arguments "for the first time in its motion to stay"). Having failed in its strategy to "avoid acknowledging what the writers were actually discussing was how to neutralize the impact of the Report in the court of public opinion," Mem. Op. at 21 n.11, DOJ has finally acknowledged that the deliberations were all about "what, if anything, to say to the public" about whether the President's conduct constituted obstruction. Def.'s Mem. at 7. Its latest version of events, however, is too little and too late.

## ARGUMENT

**I.      Standards For Granting A Stay Pending Appeal.**

In determining whether to grant a stay pending appeal courts require the movant to satisfy the same four-part test imposed on litigants seeking a preliminary injunction. Specifically, the movant must show: (1) the likelihood of success on the merits; (2) harm to the movant absent the requested stay; (3) harm to others from granting a stay; and (4) the public interest favors a stay. *See, e.g.*, *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). Likelihood of success and harm to the movant, "are the most critical" factors. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

DOJ has suggested the Court should apply a "sliding scale" framework, which "allows a movant to remedy a lesser showing of likelihood of success on the merits with a strong showing as to the other three factors[.]" Def.'s Mem. at 4 (citation and quotation omitted). As the D.C. Circuit has noted, however, the Supreme Court's decision in *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008), "could be read to create a more demanding burden [on irreparable injury], although the decision does not squarely discuss whether the four factors are to be balanced on a sliding scale" and the Court in that case declined to "decide whether a stricter standard applies." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). *See also Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 335 (D.C. Cir. 2018) (D.C. Circuit has not yet decided whether under *Winter* the sliding scale should be abandoned). But even under a more relaxed merits showing, DOJ fails to satisfy this prerequisite for a stay.

Characterized as "an extraordinary remedy," *McCammon v. United States*, 584 F. Supp. 2d 193, 197 (D.D.C. 2008) (internal marks and citation omitted), a stay pending appeal is "'not a matter of right, even if irreparable injury might otherwise result" absent the stay. *WP Co. LLC v. U.S. Small Business Admin.*, 2020 WL 6887623, at *2 (D.D.C. Nov. 24, 2020) (quoting *Nken*,

556 U.S. at 427). Instead, "the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (quotation and citation omitted). The showing by DOJ here in support of its stay motion falls far short of each of the four requirements.

## II.   DOJ Has No Likelihood Of Success On The Merits.

To demonstrate a likelihood of success on the merits of any appeal, "[i]t is not enough that the chance of success on the merits be 'better than negligible'"; there must be "[m]ore than a mere 'possibility' of relief[.]" *Id.* at 434 (internal quotations and citations omitted). Here, DOJ has *no* likelihood of success given the Court's findings, which flow from its *in camera* review of the contested document. This is not a case where reasonable minds can differ; the underlying facts are fatal to DOJ's exemption claim.

### *The Court's In Camera Review And The Context In Which The OLC Memorandum Was Prepared Demonstrate Conclusively The OLC Memorandum Is Not Privileged*

DOJ invoked the deliberative process and attorney client privileges under Exemption 5 to withhold an OLC memorandum it described as "predecisional[], submitted by senior officials of the Department to the Attorney General, and containing advice and analysis supporting a recommendation regarding the decision he was considering[.]" First Declaration of Paul Colborn (Dkt. #15-3) ("1st Colborn Decl.") ¶ 21, quoted in Mem. Op. at 17. DOJ further claimed the OLC Memorandum "consists of candid advice and analysis" that was predecisional "because it was provided prior to the Attorney General's decision in the matter[.]" *Id* at 17,18. DOJ described the memo as a "final," not "draft" document that "as a whole contains pre-decisional recommendations and advice solicited by the Attorney General and provided by OLC and PADAG O'Callaghan." Declaration of Vanessa Brinkmann (Dkt. #15-4) ("Brinkmann Decl.") ¶ 11, quoted in Mem. Op. at 18. According to Ms. Brinkmann, the memo is deliberative "as it was provided to aid in the Attorney General's decision-making process as it relates to the findings of

the SCO investigation, and specifically as it relates to whether the evidence developed by SCO's investigation is sufficient to establish that the President committed an obstruction-of-justice offense." *Id.*[1] These factual assertions formed the lynchpin of DOJ's legal argument that the OLC Memorandum fell within the protection of Exemption 5. *See* Def.'s Mem. in Supp. of Mot. (Dkt. # 15-2) at 14-15, quoted in Mem. Op. at 23, 24.

To the contrary, as the Court's *in camera* review of the document revealed—and as the public unsealing of this portion of the memo confirms—the first section of the memo contained "strategic, as opposed to legal advice," that "the agency omitted entirely from its description[.]" Mem. Op. at 19. The Court's review (as confirmed by the newly unsealed portion of the memo) also revealed "that the Attorney General was not then engaged in making a decision about whether the President should be charged with obstruction of justice"; indeed, "the fact that he [President Trump] would not be prosecuted was a given." *Id.*  In other words, there was no decision here.

The chronology of events reinforced this conclusion, as contemporaneous emails showed "not only that the authors and the recipients of the memorandum are working hand in hand to craft the advice that is supposedly being delivered by OLC, but that the letter to Congress is the priority, and it is getting completed first." *Id.* at 28. From all this the Court concluded that "the affidavits are so inconsistent with evidence in the record, they are not worthy of credence." *Id.* at 26.

---

[1] The Court's quotation of this description disproves DOJ's claim that the Court erroneously construed its briefs and declarations "to be characterizing the decision that the Attorney General was making as a decision whether to actually commence an indictment or prosecution of the President[.]" Def.'s Mem. at 6. As the cited passage makes clear, the Court understood DOJ was describing a decisionmaking process to determine "whether the evidence developed by SCO's investigation is sufficient to establish that the President committed an obstruction-of-justice offense." Mem. Op. at 18.

That same review led the Court to conclude that the OLC Memorandum also falls outside the protection of the attorney-client privilege because the memo "contains no legal advice at all," and therefore DOJ failed to meet "its burden to demonstrate that the memorandum was transmitted for the purpose of providing legal advice[.]" Mem. Op. at 31. Similarly, the chronology "undermines the assertion that the authors were engaged in providing their legal advice in connection with any sort of pending prosecutorial decision[.]" *Id.* at 32.[2]

The Court also considered the context in which OLC prepared the memo. While the OLC Memorandum purported to be an analysis of the facts set forth in the Mueller Report concerning President Trump's obstruction of justice, it was issued less than two full days after Attorney General Barr received the report from Special Counsel Mueller, a time frame that hardly provided the Attorney General "time to skim, much less, study closely" the "200 highly detailed and painstakingly footnoted pages of Volume I . . . and the almost 200 equally detailed pages of Volume II – which concerns acts taken by then-President Trump in connection with the investigation." Mem. Op. at 1-2. And perhaps most significantly, the Court considered what the behind-the-curtain review had uncovered: the memo was an effort by OLC to help the Attorney General "get[] a jump on public relations." *Id.* at 24.

> *DOJ Still Has Not Demonstrated It Was Engaged In A Process Intended To Reach A Decision Protected By Exemption 5*

In the face of this evidence, DOJ asks the Court to ignore what it observed with its own eyes and accept a newly proffered explanation that is pretexual and simply makes no sense. According to DOJ, the Attorney General was making a decision "that one could naturally call 'prosecutorial' in nature," Def.'s Mem. at 15, albeit not the decision "whether to actually

---

[2] DOJ's stay motion fails to take issue with the Court's rejection of its claim that the memo is protected by the attorney client privilege, suggesting DOJ has now abandoned that privilege claim.

commence a prosecution[.]" *Id.* at 6. Rather, the Attorney General was deciding "whether the facts articulated by Volume II of the Special Counsel's Report were sufficient to establish that the President had committed obstruction of justice . . . under the Principles of Federal Prosecution." *Id.* DOJ further asserts, with no support whatsoever,[3] that "[t]here was no legal bar to determining that the evidence did or did not establish commission of a crime," and that this decision was validly the Attorney General's to make. *Id.* at 7.

The absence of a legal bar does not transform this so-called "prosecutorial" decision into a decision protected by the deliberative process privilege. By DOJ's own description, the assessment of the Special Counsel's evidence on obstruction was untethered from any decision on whether to prosecute the President, *id.*, and had no purpose except to fill in a blank "explicitly left open by the Special Counsel[.]" *Id.* at 7. At best, it was nothing more than an academic exercise with no stated end goal and bore no resemblance to a true "prosecutorial" decision, *i.e.* one that Merriam Webster defines as related to an actual prosecution, *see* "Prosecutorial," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/prosecutorial, defined in turn as:

> the institution and continuance of a criminal suit involving the process of pursuing formal charges against an offender to final judgment.

https://www.merriam-webster.com/dictionary/prosecution.

Significantly, DOJ has yet to answer the question of why the Attorney General needed to determine whether the evidence Special Counsel Mueller had amassed satisfied the legal

---

[3] Plaintiff explained in its summary judgment papers why the only support DOJ proffered for its claim that the Attorney General had the authority to make a prosecution decision—the Declaration of Vanessa Brinkmann—fell far short of meeting its evidentiary burden. *See, e.g.*, Pl.'s Mem. in Support of Cross Mot. (Dkt. # 17-1) at 13. DOJ has still failed to provide any support for this claim.

standards for obstruction of justice, given the conclusion DOJ already had reached not to prosecute the President.

But while DOJ has not answered this question, the Court's *in camera* review of the full memo did: DOJ was "girding for a preemptive strike on the Mueller report[.]" Mem. Op. at 31. DOJ now defends its failure to address this purpose, insisting it concerned merely an "antecedent question," separate and apart from "the central decisional process . . . concerning the sufficiency of the evidence." Def.'s Mem. at 17. To the contrary, as the Court's Memorandum Opinion lays out in detail, the circumstances surrounding the creation of the OLC Memorandum and its entire contents show this was "the true purpose of the memorandum[.]" Mem. Op. at 26.

Moreover, while DOJ could have argued that this decision fell within the protection of the deliberative process privilege, it chose instead for "strategic" reasons "to pretend as if the first portion of the memorandum was not there and to avoid acknowledging that what the writers were actually discussing was how to neutralize the impact of the Report in the court of public opinion." Mem. Op. at 21 n.11. These facts coupled with the Court's *in camera* review confirm that the so-called prosecutorial decision is an invention of DOJ's, unsupported by any legal authority, to cover up and paper over the fact that the Attorney General was engaged in an effort to mislead the public about Special Counsel Mueller's report. Insofar as DOJ's counsel seeks to assert new theories about the purported "decisionmaking" process at issue that lack any support in the evidentiary record, *see* Minute Order, May 25, 2021, the Court should disregard them. *See Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007) (disregarding counsel's "post hoc explanation" that was unsupported by agency's declarations); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 150 (D.C. Cir. 2006) (same).

*The Court's Decision Was Not Based On A Misunderstanding Of DOJ's Arguments*

Confronted with its misstatements and poor litigation choices DOJ has now offered in its stay motion a half-hearted mea culpa that implicitly faults the Court for taking DOJ's claims at face value and suggests the Court's legal conclusions were "substantially premised" on an erroneous understanding of DOJ's arguments, specifically that DOJ was arguing that the decisional process at issue was whether to prosecute the President. Def.'s Mem. at 1, 14. DOJ concedes its briefs in support of summary judgment were "susceptible" to this interpretation of its claims, *id.*, and expresses "regret[]" that certain "passages" in its brief were not clearer, *id.* at 15. Not only is DOJ wrong on the basis for the Court's ruling, but its latest tactic is yet more misdirection and obfuscation.

The Court's Memorandum Opinion appropriately called out DOJ for its misstatements, misdirection, and purposeful omissions, but those actions alone did not dictate the Court's legal conclusion that Exemption 5 did not protect the OLC Memorandum from compelled disclosure. Instead, the Court's *in camera* review informed the Court about the true nature and contents of the memo and compelled the conclusion that it must be publicly disclosed. Nor did the Court base its findings of bad faith on a misconstruction of DOJ's arguments as claiming the Attorney General was considering whether to prosecute President Trump, as DOJ now argues. *See, e.g.*, Def.'s Mem. at 14-16. The Court faulted DOJ for omitting any reference to Section I of the OLC Memorandum and its contents because that is "what places Section II and the only topic the agency does identify—that is, whether the evidence gathered by the Special Counsel would amount to obstruction of justice—into its proper context." Mem. Op. at 19. As the Court found, "[t]he omission of any reference to Section I in the agency declarations, coupled with the

agency's redaction of critical caveats from what it did disclose, served to obscure the true purpose of the memorandum." *Id.* at 19-20.

Moreover, a motion for a stay is hardly the place to resolve the question of whether DOJ and its lawyers and declarants met their legal obligations to the Court, particularly where DOJ attributes motives to those actors that are unsupported by any new declarations and asks the Court to assume facts not in evidence. *See, e.g.*, Def.'s Mem. at 11 (describing what a decisionmaker "[o]ften" does before directing that a decisional memorandum be prepared). The seriousness of the government's misconduct, which led the Court to conclude that DOJ had acted in bad faith, calls for a full hearing on the matter with an opportunity to adduce a more complete factual record, not one shaped exclusively by DOJ.

### The Chronology Of Events Undermines DOJ's Privilege Claim

The Court rejected DOJ's privilege claim on the additional ground that "contemporaneous emails" in the evidentiary record "undermined" the agency declarants' "uninformed assertions" that Document 15 was predecisional. Mem. Op. at 26-28. DOJ argues the Court made a legal error by relying "exclusively on the timing of th[e] memorandum's preparation relative to the preparation of the letter to Congress," because records "can retain their predecisional character even when they are finalized after the decision in question." Def.'s Mem. at 10. DOJ mischaracterizes both the Court's opinion and the governing law.

The deliberative process privilege requires a "functional rather than formal inquiry." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021). Thus, in evaluating whether an agency is improperly withholding a *post*decisional document, courts do not blindly accept the agency's labels or designations, but rather examine "the function of the document[]" and "the context of the administrative process which generated" it. *Sears*, 421 U.S. at 138; *see*

*also Access Reports v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("[T]he 'predecisional' label clearly focuses attention on the role of the . . . document in the decisionmaking process."); *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983) (same); Mem. Op. at 26 (citing *Paisley*). In keeping with this functional approach, any determination of "whether a document generated *after* an agency decision" is predecisional—as DOJ claims is the case here—must be made on a "case by case basis." *New York Times Co. v. OMB*, 2021 WL 1329025, at *6 (D.D.C. Mar. 29, 2021) (emphasis added); *see, e.g.*, *EPIC v. DOJ*, 490 F. Supp. 3d 246, 271-74 (D.D.C. 2020) (rejecting agency's argument that postdecisional documents "reflect[ed] predecisional deliberations" where *in camera* review revealed the withheld information concerned "decisions that were already final").

The Court faithfully applied these principles in rejecting DOJ's privilege claim. Contrary to DOJ's assertions, the Court did not espouse any categorical rule that a record prepared contemporaneously with, or after, the pertinent agency decision can never be predecisional. *See* Def's Mem. at 5, 10. The Court instead found, based on a "close review" of the evidentiary record in this case, that "contemporaneous emails" attached as Exhibit A to CREW's motion laid out a chronology that was "inconsistent" with the DOJ declarants' sworn statements "that Attorney General Barr made the determination he communicated to Congress based on advice contained in the memo." Mem. Op. at 26-28 & Attachment 1 (summary of emails). Rather than showing any genuine deliberative process in which the memorandum was used to aid a final decision, the emails showed both the memorandum and congressional letter being "written by the very same people at the very same time," with both the "authors and recipients of the memorandum working hand in hand to craft the advice that is supposedly being delivered by OLC," and the "letter to Congress [being] the priority." *Id.* at 28. This contemporaneous

evidence, the Court found, "undermine[d] the uninformed assertions in [DOJ's] declarations." *Id.*; *see also id.* at 8-9 (explaining that courts can reject agency declarations for lack of personal knowledge or reliance on hearsay); *id.* at 18 (detailing Ms. Brinkman's lack of personal knowledge of key facts).[4] The Court's careful, fact-bound analysis of "the function of the document[]" and "the context of the administrative process which generated" it was wholly appropriate. *Sears*, 421 U.S. at 138.

The case law cited by DOJ does not indicate otherwise. *See* Def.'s Mem. at 10-11. While those cases recognize the privilege can extend to postdecisional records in certain limited circumstances, none of them involved anything close to the type of sham deliberative process on display here.

Two of the cited cases merely recognized that "'documents dated after [the decision at issue] may still be predecisional and deliberative *with respect to other, nonfinal agency policies*,'" if the agency "suppl[ies] sufficient information to enable a court to determine whether a communication after a policy was decided was in furtherance of a *subsequent agency action*." *New York Times*, 2021 WL 1329025, at *6 (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)) (emphasis added). These cases are inapposite because DOJ has not pointed to any "subsequent agency action" to which the OLC Memorandum relates. To the contrary, the agency concedes it relayed the pertinent final decision to Congress two hours *before* finalizing the memorandum. Second Declaration of Paul Colborn (Dkt. 19-1) ("2d Colborn Decl.") ¶ 9.

Other cases cited by DOJ involved postdecisional records that revealed predecisional "ingredients" of the agency's deliberative process. *See Mead Data Cent., Inc. v. U.S. Dep't of Air*

---

[4] The Court's findings thus related not only to the merits of DOJ's privilege claim, but also to the evidentiary weight to be accorded to the agency's declarations—a point DOJ appears to overlook. *See* Mem. Op. at 25 (holding that DOJ's "affidavits are so inconsistent with evidence in the record, they are not worthy of credence").

*Force*, 566 F.2d 242, 257 (D.C. Cir. 1977) (records revealed "views and opinions of Air Force staff" that comprised the "raw materials which went into the [subsequent] decision of the Air Force to contract with West Publishing Co. on certain terms"); *CREW v. DOJ*, 658 F. Supp. 2d 217, 234 (D.D.C. 2009) (records summarized investigative interviews in which former Vice President Cheney disclosed predecisional White House deliberations on various matters); *EPIC v. DHS*, 2006 WL 6870435, at *7 (D.D.C. Dec. 22, 2006) (email "recounted [prior] recommendations and evaluations for the purpose of informing Census"). But none of these cases addressed situations remotely similar to this one, where contemporaneous evidence shows that the supposedly predecisional memorandum was crafted by both "the authors and the recipients" of the purported advice, who were simultaneously drafting the final decision document. Mem. Op. at 28. In these highly unusual circumstances—where there is strong reason to doubt any genuine "decision-making" was ongoing—the Court rightfully dismissed the declarants' "uninformed assertions" as "not worthy of credence." *Id.* at 25-28; *see also id.* at 34 (emphasizing that Court's decision was based on a "unique set of circumstances that include the misleading and incomplete explanations offered by the agency, the contemporaneous materials in the record, and the variance between the Special Counsel's report and the Attorney General's summary"); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (privilege inapplicable where "[n]o 'decision' is being made or 'policy' being considered").

The Second Colborn Declaration does not change the analysis. *See* Def.'s Mem. at 11. This declaration relayed statements from an unidentified person who allegedly told Mr. Colborn that "the Attorney General had received the substance of the advice contained in Document No. 15" at some unspecified point "prior to making his [final] decision and sending the

[congressional] letter." 2d Colborn Decl. ¶ 9.[5] The Court's opinion explained why such "hearsay" relayed by declarants who "lack [] personal knowledge" may be rejected in FOIA cases. Mem. Op. at 8-9 (citing *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264-65 (D.D.C. 2004)). And discounting the declarants' "uninformed assertions" here was particularly appropriate given the countervailing record evidence. *See* Mem. Op. at 27-8.

For the first time in its stay motion, DOJ posits that the "predecisional character of a recommendation memorandum" would not "change even if drafted to support an anticipated outcome," and likens this scenario to that of a judge asking a law clerk to draft an opinion. Def.'s Mem. at 11-12. DOJ cites no authority supporting this tenuous theory, and, more importantly, its declarants never stated the memorandum was drafted "to support an anticipated outcome." The Court should disregard counsel's "post hoc" musings—particularly in the context of a motion to stay pending appeal. *See Morley*, 508 F.3d at 1120; *Judicial Watch*, 449 F.3d at 150.

Despite DOJ's attempts to normalize the supposed "decisionmaking" process at issue, nothing about it was normal. Agency deliberations typically involve a consultative "give-and-take" through which officials exchange ideas, debate competing proposals, and weigh options with open minds—all with the goal of improving the quality of the agency's final decision. *See Judicial Watch, Inc. v. DOD*, 847 F.3d 735, 739 (D.C. Cir. 2017). That is not at all what happened here. The evidence instead reflects a cynical effort to use the machinery of the Justice Department to craft a legal "cover" memorandum not to aid any decisionmaking, but to support a preordained conclusion that "the evidence developed during the Special Counsel's investigation

---

[5] Mr. Colburn made this representation after stating in his first declaration that the Attorney General announced his final decision to Congress "*[f]ollowing* receipt of the memorandum." 2d Colborn Decl. ¶ 9 (quoting 1st Colborn Decl. ¶ 17) (emphasis added).

is not sufficient to establish that the President committed an obstruction-of-justice offense," as set forth in DOJ's March 24, 2019 letter to Congress. The Court correctly held that the memorandum was not predecisional.

### III.     DOJ Will Suffer No Irreparable Harm To An Interest The FOIA Protects.

FOIA cases typically present the paradigmatic situation of irreparable harm absent a stay pending appeal because "once the information has been turned over, the bell cannot be unrung on appeal." *WP Co LLC.*, 2020 WL 6887623, at *3. This case, however, presents the exceptional circumstance where the harm DOJ seeks to prevent falls outside the protection of the FOIA. The Court's factual findings could not be clearer: DOJ was not engaged in a decisionmaking process, nor was OLC offering legal advice. These facts establish unequivocally that the OLC Memorandum falls outside the protection of Exemption 5. DOJ's latest admission that the memorandum was drafted with the recognition that actually prosecuting the President was constitutionally foreclosed, Def.'s Mem. at 8, reinforces the Court's assessment that it was based "entirely" on a "hypothetical" scenario with no prospect of prosecutorial action by DOJ. Mem. Op. at 20. It necessarily follows that disclosure of the OLC Memorandum would not harm any exemption-protected interest.

Indeed, the record is devoid of any evidence explaining how disclosure of this particular memorandum—in which DOJ lawyers were engaged in what amounts to a thought experiment about a hypothetical case, with no chance of prosecutorial action—would harm future agency deliberations. The declarants have provided no "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Ctr. for Investigative Reporting ("CIR") v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019); *cf. Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (foreseeable

harm shown where declaration provided a detailed explanation of the forms at issue, how they are used by DOJ administrative appeals staff attorneys, and why disclosure of the particular information at issue would hamper those attorneys' day-to-day duties).

Even more compelling, as this Court's finding of bad faith on the part of DOJ makes clear, DOJ asserted the exemption to "obscure the true purpose of the memorandum." Mem. Op. at 19. The Court's *in camera* review confirmed that the Attorney General advanced a narrative about what the Special Counsel had found that was "'substantively at odds with the redacted version of the Mueller Report.'" Mem. Op. at 25, quoting *EPIC. v. DOJ,* 442 F. Supp. 3d 37, 49 (D.D.C. 2020). The *in camera* review also apparently confirmed what CREW had suspected: the contents of the OLC Memorandum were "part of a larger campaign initiated by Attorney General Barr to undermine the Special Counsel's report and rehabilitate the President[.]" Mem. Op. at 19, quoting Pl.'s Mem. in Supp. of Cross Mot. (Dkt. # 17-1) at 15; Mem. Op. at 25 ("[W]hile CREW had never laid eyes on the document, its summary was considerably more accurate than the one supplied by the Department's declarants.").

These circumstances lead to the conclusion that DOJ seeks a stay not to prevent harm to an interest that the FOIA legitimately protects, but to prevent the public from accessing information that would confirm the degree of Attorney General Barr's misrepresentations to the American public and Congress. Moreover, given the Court's finding of bad faith on the part of DOJ and the language the Court used appropriately placing blame on the declarants and legal arguments DOJ advanced here, the agency likely seeks a stay to prevent further embarrassment and harm to individual agency actors.

Such harm, however, cannot provide a basis to support a stay pending appeal, as it does not fall within the protection of Exemption 5. The FOIA Improvement Act, which codified the

foreseeable harm standard, dictates that "an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019). Congress added this requirement "to restrict agencies' discretion in withholding documents under FOIA." *CIR*, 436 F. Supp. 3d at 106. "Exemption-protected" interests exclude information whose disclosure might embarrass public officials "'because errors and failures might be revealed, or because of speculative or abstract fears.'" S. Rep. No. 114-4, at 7 (quoting White House Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 21, 2009)). Excluding embarrassing information from the FOIA's protection reflects Congress' judgment that "[n]ondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." *Id.*

While this Court declined to assess DOJ's foreseeable harm showing in light of its conclusion that the OLC Memorandum was not predecisional, it noted "that the Colborn declaration did little to comply with that provision," and "merely recites the elements of the privilege." Mem. Op. at 29 n.16. In any event, the true purpose of the OLC Memorandum and its role in the Attorney General's larger effort to undermine the Special Counsel's report and to insulate the President from legal and political jeopardy defeat any claim of harm absent a stay to interests legitimately protected by the FOIA. Moreover, as discussed below, the harm to the public should the Court stay its order mandating that the OLC Memorandum be disclosed heavily outweighs any harm to DOJ.

**IV.     A Stay Would Substantially Harm CREW And The Public.**

In evaluating a stay request, "[t]he public interest is a uniquely important consideration[.]" *WP Co .LLC*, 2020 WL 6887623, at *3 (quotations and citations omitted). This Court already has recognized the significant public interest at issue with its conclusion that "[i]t is time for the public to see" the OLC Memorandum. Mem. Op. at 4. Disclosing the memorandum would add considerably to public understanding of one of our nation's darkest hours—the effort by the President of the United States to obstruct justice and the aid provided him by the Attorney General, using the powers of his office, to cover up that crime—that charitably described included "inaccurate" representations to Congress. *See id.* at 22 (record here "calls into question the accuracy of Attorney General Barr's March 24 representation to Congress").

Nor is the OLC Memorandum of only historical importance. Controversy concerning President Trump's role in the Ukraine scandal continues, with Congress recently reaching a deal with former White House Counsel Donald F. McGahn for his testimony "about Mr. Trump's efforts to obstruct the Russia inquiry[.]" Charlie Savage, House Democrats and White House Reach Deal Over Testimony by Ex-Trump Aide, *New York Times* (May 11, 2021), https://www.nytimes.com/2021/05/11/us/politics/mcgahn-testimony.html. The nation is still reeling from the January 6, 2021 insurrection that President Trump incited in an effort to undermine our democracy, underlining the outsize role the former president continues to play. And perhaps most significantly for the case at bar, the OLC Memorandum will inform the public about whether and to what extent the Department of Justice actually evaluated the evidence concerning President Trump's obstruction of justice. Such an evaluation is long overdue, particularly now that DOJ is no longer barred from prosecuting the former president under DOJ precedent that bars the prosecution of only a sitting president.

Nevertheless, DOJ argues that public policy weighs in favor of a stay because disclosing the OLC Memorandum will "irrevocably compromise[]" the interest in "protecting the confidentiality of government deliberati[ons]" that Exemption 5 seeks to advance. Def.'s Mem. at 18. But from a public policy perspective, protecting high-level government officials who abuse the power of their offices from closer public scrutiny presents a much greater harm.

In short, President Trump's obstruction of justice and Attorney General Barr's role in keeping evidence of that obstruction from the public remain of critical public interest. Far from fading in significance, the OLC Memorandum—which a former Acting Solicitor General recently called "the people's memo," Neal K. Katyal, Opinion, The Public Deserves to See This Legal Memo About Donald Trump, *New York Times* (May 26, 2021) https://www.nytimes.com/2021/05/26/opinion/trump-barr-obstruction-justice-doj.html—will add to the public's knowledge about President Trump and Attorney General Barr, two individuals who have yet to be held fully accountable for their actions. Releasing the OLC Memorandum in full is a first step toward that accountability.

## **CONCLUSION**

On balance, none of the four factors supports a stay, while the interests of the public and the Plaintiff weigh strongly in favor of immediate disclosure. Accordingly Plaintiff respectfully requests that the Court deny DOJ's motion for a stay.

Dated: May 28, 2021                                  Respectfully submitted,

                                                    */s/ Anne L. Weismann*
                                                    Anne L. Weismann
                                                    (D.C. Bar No. 298190)
                                                    5335 Wisconsin Avenue, N.W.
                                                    Suite 640
                                                    Washington, D.C. 2015
                                                    Phone: 301-717-6610
                                                    Weismann.anne@gmail.com

Adam J. Rappaport
(D.C. Bar No. 479866)
Nikhel S. Sus
(D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics
in Washington
1101 K Street, N.W., Suite 201
Washington, D.C.  20001
Phone: (202) 408-5565
arappaport@citizensforethics.org

*Attorneys for Plaintiff*

23