**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
CITIZENS FOR RESPONSIBILITY                )
AND ETHICS IN WASHINGTON,             )
                                                          )
                        Plaintiff,                      )
                                                          )           Civil Action No. 19-1552 (ABJ)
            v.                                             )
                                                          )
U.S. DEPARTMENT OF JUSTICE,            )
                                                          )
                        Defendant.                   )
_____)

**<u>ORDER</u>**

On May 3, 2021, the Court ruled on the cross motions for summary judgment in this Freedom of Information Act ("FOIA") case.  It ordered the Department of Justice ("DOJ") to produce what had been referred to as Document 15 – a March 24, 2019 "Memorandum for the Attorney General, through the Deputy Attorney General" ("Barr Memo") – to the plaintiff. *See* Unsealed Mem. Op. [Dkt. # 23] ("Mem. Op"); Order [Dkt. # 26].  The Barr Memo, from an Assistant Attorney General in the Office of Legal Counsel and the Principal Associate Deputy Attorney General, contained an introduction and two sections:  Section I addressed whether the Department should even announce a conclusion on whether then-President Trump should be prosecuted for obstruction of justice based on the findings in the Report of the Special Counsel, and Section II set out reasons why a prosecution would not be warranted.  *See* Barr Memo. Defendant DOJ produced Section I, but it has moved to stay that portion of the order that calls for the disclosure of Section II.  Mot. to Stay [Dkt. # 32] ("Mot.").

A stay or injunction pending appeal is an "extraordinary remedy."  *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).  It is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citation omitted).  Instead, a stay is an exercise of judicial discretion, to be based upon the specific circumstances of the case.  *Id.* at 433.  The moving party bears the burden

of justifying why the court should grant this remedy, based upon a consideration of the following four factors:

1.   whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits;

2.   whether the applicant will be irreparably injured absent a stay;

3.   whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

4.   where the public interest lies.

*Id.* at 433–34.  The most important factors are whether the applicant has made a strong case that it will succeed on the merits and whether it will face irreparable injury if a stay is not granted by the Court.  *See id.* at 434 ("The first two factors of the traditional standard are the most critical.").

It is the second factor that will carry the day here, but as is required by these precedents, the Court will review them all.

### A.  Likelihood of Success on the Merits

The likelihood of success factor requires that the movant show "[m]ore than a mere 'possibility' of relief," and it is "not enough that the chance of success on the merits be 'better than negligible.'"  *Nken*, 556 U.S. at 434.

The motion to stay does not identify a serious flaw in the legal standard applied by the Court, and it does not provide grounds to conclude that DOJ is likely to succeed in challenging the Court's ruling that it failed to meet its burden to establish that the Barr Memo was properly withheld under Exemption 5.

With respect to the deliberative process privilege, DOJ asserted in its summary judgment briefing:

> The document contains . . . candid analysis and advice provided to the Attorney General prior to his final decision on the issue addressed in the memorandum – whether the facts recited in Volume II of the Special Counsel's Report would support initiating or declining the prosecution of the President . . . .  [B]ecause any determination as to whether the President committed an obstruction-of-justice offense was left to the purview of the Attorney General, the memorandum is clearly pre-decisional.

Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 15-2] ("Def.'s Mem.") at 14–15 (internal quotation marks and citations omitted).

The memorandum was indeed deliberative, as the Court found in its opinion. *See* Mem. Op. at 17. So there is no ruling against DOJ on that element of the privilege to be challenged on appeal.

The concern that led to the Court's ruling was that in its attempt to shield the Barr Memo from public view, DOJ inaccurately described the decision-making process that was supposedly underway. As to this issue, the Court generally agrees with plaintiff CREW's analysis of the flaws in the arguments advanced in the motion to stay. *See* Pl.'s Opp. to Mot. to Stay [Dkt. # 34] ("Opp.") at 7–18. The Court did not rule as it did because the declarations were "confus[ing];"[1] it found the declarations and the justifications in the agency's pleadings for invoking Exemption 5 to be misleading. The Department chose not to tell the Court the purpose of the memorandum or subject it addressed *at all*, and no amount of apologizing for "imprecision" in the language it did use can cure the impact of that fundamental omission.

DOJ would have the Court believe that it did not mean to suggest that the Attorney General was making a final decision about whether to initiate or decline an actual prosecution when it said he received the memo "prior to his final decision on the issue addressed in the memorandum – whether the facts . . . would support initiating or declining the prosecution of the President." Def.'s Mem. at 14 (internal quotation marks omitted); *see also* Decl. of Vanessa R. Brinkmann [Dkt. # 15-4] ("Brinkmann Decl.") ¶ 11 ("[A]ny determination as to whether the President committed an obstruction-of-justice offense was left to the purview of the Attorney General."). But it had an opportunity to dispel the misimpression it created with its own language once before, and it did not seem to think its position was confusing then.

CREW, like the Court, plainly understood the motion for summary judgment and the declarations to be representing that the Barr Memo related to a then-pending decision as to whether to prosecute the President. It argued in opposition to defendant's motion:

> [T]he premise for DOJ's invocation of the deliberative process and attorney client privileges to justify the withholdings is fundamentally flawed. OLC created the documents at issue not to provide legal advice to aid Attorney General Barr in deciding whether to bring a prosecution – a decision that the Attorney General had delegated to Special Counsel Mueller. Instead, OLC's memorandum served to help the Attorney General falsely spin the findings of Special Counsel Mueller into a vindication of President Trump and to sow doubt about and undermine the findings of the Special Counsel.

---

1       *See* Mot. at 1, 6, 8, 15, 16.

Pl.'s Mem. in Opp. to Summ. J. [Dkt. # 16-1] ("Pl.'s Mem.") at 1–2; *see also id.* at 12 ("[B]y the time OLC submitted its memo to the Attorney General on March 24, 2019, there were no remaining decisions or actions for the Attorney General to make as to the President and whether or not he had obstructed justice.  Nevertheless, the government's brief attempts to place the March 24, 2019 memo in the context of a prosecutorial decision the Attorney General faced.").

So what did DOJ say in reply?  Did it explain then that what it meant to say was that the Barr Memo contained deliberations and advice related to the different question of whether, given the agency's view that there was a constitutional barrier to an indictment, the Attorney General should offer his prosecutorial judgment as to the strength of the evidence anyway, and if so, what that assessment should be?  No.  In its reply, it doubled down:  it said that the Barr Memo was "prepared for the purpose of giving legal advice and analysis to the Attorney General for his use in the deliberations as to 'whether the facts set forth in Volume II of Special Counsel Mueller's report '*would support initiating or declining the prosecution of the President for obstruction of justice* under the Principles of Federal Prosecution,' and that the substantive advice and analysis contained therein were provided to the Attorney General to assist him in making *that determination*."  Def.'s Mem. in Reply [Dkt. # 20] ("Def.'s Reply") at 12, n.5 (emphasis added); *see also id.* at 11, quoting Decl. of Paul P. Colborn [Dkt. # 15-3] ("Colborn Decl.") ¶ 17 ("[T]he advice contained in the memorandum was submitted to the Attorney General to '*assist him in determining* whether the facts set forth in Volume II of Special Counsel Mueller's report would support initiating or declining the prosecution of the President for obstruction of justice under the Principles of Federal Prosecution.'") (emphasis in original) (second set of internal citations omitted).

Saying that the decision was about whether the evidence would support "initiating or declining" the prosecution, as opposed to, whether the evidence could support a criminal charge in the absence of a constitutional bar, made it seem that whether to prosecute was the specific issue under review.  To drive that point home, the reply devoted several pages to disputing CREW's assertion that the Attorney General was *not* actively engaged in making that decision.  *See* Reply at 13–14 ("Plaintiff's arguments in response rest only on its misinterpretation of the DOJ special counsel regulations and its own irrelevant speculation . . . unsupported by admissible evidence, that the Attorney General was not engaged in 'a legitimate decision on whether to initiate or decline prosecution of the President for obstructing justice.' . . . [U]nder the relevant regulations, 'ultimate

responsibility' for matters investigated by a special counsel rest with the Attorney General . . . .
Thus, none of the limitations or obligations of 28 C.F.R. § 600.7(b) were triggered as to whether
or not to charge the President.") (third set of internal citations omitted).

The fact that DOJ made no effort to correct CREW's reading of the declarations, and it
argued forcefully that it was indeed up to the Attorney General to initiate or decline prosecution
reveals that at the time it submitted the pleadings justifying the FOIA withholdings, it fully
intended to convey the impression that was conveyed.  It took the *in camera* review DOJ resisted
to reveal that the Barr Memo was something other than what had been described.  Since the agency
bears the burden to justify withholdings in a FOIA case, once those inconsistencies and omissions
had been discovered, the Court was not required to dissect the text to come up with a way to square
DOJ's incomplete representations with the memorandum itself.

The motion to stay takes particular issue with the Court's observation that there was "also
a problem with the 'pre' portion of 'pre-decisional.'"  Mem. Op. at 26; *see also* Mot. at 10–11.
DOJ asserts that "[t]he Court's holding that Document no. 15 was not predecisional relies
exclusively on the timing of that memorandum's preparation relative to the preparation of the letter
to Congress."  Mot. at 10.  It points out that a declaration in the record that was not cited in the
Memorandum Opinion "explains 'that prior to making his decision and sending the letter, the
Attorney General had received the substance of the advice contained in [the memorandum] and
reviewed multiple drafts of that memorandum,' and that '[t]he substance of the advice contained
in [the memorandum] did not change in any material way between the time when the Attorney
General last received a draft of the memorandum and the time the Attorney General initialed the
approval box on the signed final form of the memorandum.'"  Mot. at 9–10, citing Decl. (Second)
of Paul P. Colborn [Dkt. # 20-1] ("Second Colborn Decl.") ¶ 9.

But that argument depends upon a very cramped representation of what troubled the Court.
The point was not just that the final version of the Barr Memo was initialed after the letter went
out; the point was that the process of drafting the letter to Congress and process of creating the
memo to the Attorney General were going on at the same time, involving the same people, so the
chronology did not support the assertion that the memo played any particular role in the
development, as opposed to the memorialization, of the view of the evidence the Attorney General
had already decided he would choose to announce.  In other words, in addition to insisting that
there was some prosecutorial decision pending that it fell to the Attorney General to make, which

is contrary to what DOJ is saying now, *see* Mot. at 7 ("The Attorney General was *electing* to make a decision that was explicitly left open by the Special Counsel:   whether, in 'a prosecutor's judgment[,] . . . crimes were committed . . . .'") (emphasis added),[2] DOJ suggested that it was the Barr Memo that prompted the Attorney General to speak, when it appears that the decision to speak prompted the Barr Memo.

In any event, this objection strikes far from the heart of the opinion.  The Court's brief discussion concerning the pre-decisional nature of the document was merely a secondary ground that added strength to the Court's decision to reject the deliberative process privilege claim for the reasons detailed in the previous ten pages.  So even if the Court were to agree that the transmission of a draft version of the Barr Memo earlier in the weekend made it pre-decisional with respect to the decision on the question of "what should the Attorney General tell Congress about *his* prosecutorial judgment given the potential impact of the report of the Special Counsel's judgment?", it would not change anything about the ruling in this case, which was based on the fact that DOJ could not bring itself to tell the Court when it was supposed to what decision-making process was underway.

With respect to the likelihood of success on appeal, it simply does not matter that, as DOJ emphasizes now, "given the decision the Attorney General was making – whether the facts constituted an offense that would warrant prosecution – the decisional process was privileged, just as it would have been if the Attorney General had been deciding whether to actually commence a prosecution."  Mot. at 7.  The fact that such deliberations could have been subject to the privilege was fully acknowledged in the Court's opinion.  *See* Mem. Op. at 21, n.11; *see also id.* at 32, n.18. The problem was that DOJ did not choose to assert that as a basis for withholding the document. And the motion to stay does not dispute the legal proposition that the Court need not predicate a judgment in the agency's favor on inaccurate or incomplete declarations.

So the motion to stay does not support a finding of a likelihood of success on the merits on the portion of the ruling related to the deliberative process privilege.

DOJ also withheld the record on the grounds of the attorney-client privilege.  By ignoring the existence of Section I, the agency left the erroneous impression that the entire memorandum contained legal analysis and advice, when it turned out that Section I was purely strategic and did

_____

[2]      As noted in footnote 12 of the Memorandum Opinion, it is not entirely accurate to say that the Special Counsel left this question "open."  *See* Mem. Op. at 23, n.12.

not contain legal advice.  But DOJ is not seeking to challenge that finding on appeal, and Section I has been produced.

Section II unquestionably includes the sort of application of law to facts that could be covered by the attorney-client privilege if all of the other elements of the privilege were established.  Here, for the reasons detailed in the opinion, DOJ failed to make out those elements, particularly since the memorandum was the work product of not only the lawyer from the Office of Legal Counsel, but also the Attorney General's own chief of staff, and the Deputy Attorney General and his Principal Associate Deputy.  None of the declarations lays out the facts needed to support a finding that the attorney-client privilege would have covered their advice on the topics involved.  *See* Mem. Op. at 32–34.

The Court acknowledges that DOJ, an agency full of lawyers, has an institutional interest in preserving its ability to assert the attorney-client privilege with respect to certain intra-agency communications, in particular, those containing legal advice provided by the Office of Legal Counsel to other lawyers within the Department.  But the opinion did not question the existence of the attorney-client privilege within government agencies, *see* Mem. Op. at 29, and it recognized the special role the Office of Legal Counsel serves within the Department of Justice. *See id.* at 30–31.  The Court found – given the unique circumstances surrounding the drafting of the Barr Memo, including the timing and joint nature of its creation, and the unique issues presented by DOJ's pleadings, including the inconsistencies between the declarations and the memo itself – that DOJ failed to meet its burden to establish that the record was protected under the established law governing the privileges it asserted.  *Id.* at 33.

In sum, in the Court's view, this factor does not weigh in favor of a stay.

**B. Irreparable Harm**

In the absence of a stay, the Department would be required to disclose a record it has withheld on the grounds that it is covered by the deliberative process and attorney-client privileges.

It is well-recognized that requiring the production of potentially privileged material would essentially render any appeal moot, and Justice Marshall observed that this would constitute irreparable injury.  *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308–09 (1989) (Marshall, J., in chambers) (issuing stay in FOIA action and observing that disclosure of documents would moot defendant's ability to appeal, thereby resulting in irreparable injury); *see also People for the Am. Way Found. v. U.S. Dept. of Educ.*, 518 F. Supp. 2d 174, 177

(D.D.C. 2007) ("Particularly in the FOIA context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal.").

As noted above, the Court applied existing law; it did not narrow or deny the existence of either privilege within the agency, and it recognized the special role played by the Office of Legal Counsel.  It found with respect to this particular document, based on these particular declarations, that the elements of the privilege had not been established.  But it agrees that without a stay, the battle would be lost before it begins.  Therefore, this factor weighs heavily in favor of a stay.

### C. Injury to Other Parties and the Public Interest

As noted in the Court's Memorandum Opinion, Section II of the memorandum addresses "whether the evidence gathered by the Special Counsel would amount to obstruction of justice." Mem. Op. at 19.

CREW submits that it and the public would be disadvantaged by a stay and that the public interest favors disclosure.  *See, e.g.*, Opp. at 4 ("[C]ontinuing to deprive the public of critical information to evaluate the conduct of former Attorney General Barr and former President Trump . . . would cause harm to Plaintiff and the public.").

But the public interest in disclosure now does not outweigh DOJ's interest in preserving a privilege that would be lost if the Court were to order disclosure.  It is worth noting that the analysis the Attorney General refined that weekend, in consultation with the Deputy Attorney General, his own staff, and the Office of Legal Counsel, was communicated to congressional leaders in the publicly available March 24 letter the group wrote at the same time.  And the Attorney General enumerated the reasons he believed the case lacked prosecutive merit again when he testified before Congress in April and attributed his comments, in part, to the OLC.  *See* Opp. at 3–4 (discussing the "advice" the Attorney General received from OLC).  So there is a fair amount of information available to members of the public who are interested in the reasoning behind the opinion the Attorney General announced.

What has been missing from the public discourse entirely, though, was why the Attorney General issued an opinion in the first place, and that was answered for the first time when DOJ complied with this Court's order to disclose Section I.  While there may be some additional public benefit in revealing the contents of Section II, the Court will not deny the Department the opportunity to challenge its ruling in order to advance that interest at this time.

For all of these reasons, then, the motion is **GRANTED**.


AMY BERMAN JACKSON
United States District Judge

DATE: June 14, 2021